UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

SISTEM MUHENDISLIK INSAAT SANAYI VE
TICARET, A.S.,

          Plaintiff,

   -against-

THE KYRGYZ REPUBLIC.,

          Defendant.

------------------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLYFILED
DOC#: _____
DATE FILED: 9/30/16

12-CV-4502 (ALC)

**OPINION &
ORDER**

**ANDREW L. CARTER, JR., District Judge:**

Sistem Muhendislik Insaat Ve Ticaret, A.S. ("Sistem"), a Turkish entity, filed a Complaint on June 8, 2012 to Confirm Foreign Arbitral Awards pursuant to 9 U.S.C. § 201 *et seq.*, against the Kyrgyz Republic. Plaintiff seeks to confirm the final arbitration award issued on September 9, 2009. The Kyrgyz Republic opposes confirmation, raising a jurisdictional objection to the confirmation of the arbitration award. The Kyrgyz Republic also seeks dismissal on the grounds of improper venue and forum non conveniens. The parties have each filed a cross-motion for summary judgment.

For the reasons stated herein, Plaintiff's motion for summary judgment is granted and Defendant's motion is denied.

## BACKGROUND[1]

Plaintiff Sistem is a company registered in Turkey. Defendant is the Kyrgyz Republic, a sovereign nation. On or about April 28, 1992, Defendant agreed to a bilateral investment treaty

---

[1] The background is derived from Plaintiff's Statement of Undisputed Facts (ECF No. 112). Defendant failed to submit its own statement or counterstatement of undisputed material facts in violation of Local Rule 56.1. The purpose of Local Rule 56.1 is "to aid the courts in deciding summary judgment motions by quickly identifying disputed material facts." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009). Here, the material facts are clear. Defendant's failure to file a Rule 56.1 statement will be overlooked and the Court will not decide the motions on these grounds.

1

("BIT") with Turkey. Defendant is a party to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. On or about June 9, 1995, Defendant signed the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States (the "ICSID Convention"). Although Defendant is a signatory of this Convention, it has never ratified it.

On September 30, 2005, Sistem filed a Request for Arbitration with ICSID. Sistem's Request for Arbitration invoked ICSID's jurisdiction under the Additional Facility Rules. Sistem contended that Defendant had consented to jurisdiction under ICSID's Additional Facility Rules in three ways: (1) through the dispute resolution clause in the Kyrgyz-Turkey BIT; (2) through the "most favored nation" clause in that treaty; and (3) through a provision of the Kyrgyz Law on Investment.

The ICSID Additional Facility Rules require that any objection to the tribunal's jurisdiction be raised "as soon as possible after the constitution of the Tribunal and in any event no later than the expiration of the time limit fixed for the filing of the counter-memorial." Defendant filed a counter-memorial on jurisdiction on May 9, 2007. This submission presented a number of jurisdictional arguments but did not include a jurisdictional challenge to the fact that ICSID was invoking the Additional Facility Rules. The counter-memorial did not argue that ICSID Additional Facility proceedings were outside the scope of the Kyrgyz-Turkey BIT and, in fact, did not mention the Additional Facility Rules at all.

On September 13, 2007, the arbitral tribunal issued its decision on jurisdiction, concluding that it had jurisdiction under both the BIT and the Kyrgyz Law on Investment. The tribunal then held a three-day merits hearing on October 7-9, 2008. Defendant was represented by counsel at this hearing and presented witness testimony. On September 9, 2009, the tribunal

issued its award on the merits, holding that Defendant had deprived Plaintiff of its property rights in a hotel the parties had previously invested in. The tribunal also held that this deprivation breached the BIT since Defendant expropriated Plaintiff's property without paying compensation.

The tribunal awarded Plaintiff $8.5 million plus costs and interest.[2] Defendant did not seek judicial review to annul or set aside the award. To date, Defendant has not paid any part of the award.

## DISCUSSION

### I. Confirmation of Arbitration Award

#### a. Legal Standard

In an arbitration involving at least one foreign entity, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") and the Federal Arbitration Act ("FAA") apply.[3] Typically, "arbitration panel determinations are generally accorded great deference under the FAA." *Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 638 (2d Cir. 2016) (citation omitted). Under the New York Convention, a court will not confirm an award if it finds "one of the [specified] grounds for refusal or deferral of recognition or enforcement of the award." New York Convention art. IV(1). Nonetheless, "[a] district court's role in reviewing a foreign arbitral award is strictly limited and the showing required to avoid summary confirmance is high." *Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Fed'n*, 361 F.3d 676, 683 (2d Cir. 2004)

---

[2] Plaintiff notes that this amount was approximately $11.5 million as of February 1, 2016.
[3] The Convention is frequently referred to as the "New York Convention" or the "United Nations Convention." It was enacted and opened for signature in New York City on June 10, 1958, and entered into force in the United States after ratification on December 29, 1970. It is implemented by, and reprinted in, the Federal Arbitration Act at 9 U.S.C. § 201-08. *See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 18 n.1 (2d Cir. 1997).

3

(internal quotation marks omitted) (citing *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19, 23 (2d Cir. 1997)). This limitation exists "in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Yusuf Ahmed Alghanim*, 126 F.3d at 23 (citation omitted). Thus, a court will confirm an award if the opposing party fails to meet its burden.

### b. Analysis

Here, Defendant argues that Plaintiff's action must be dismissed because the tribunal that oversaw the arbitration did not have proper jurisdiction. Accordingly, Defendant's objection finds a basis in the fourth ground for refusing to recognize or enforce an arbitral award: "The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ." New York Convention art. V(1)(d); *see also Yusuf Ahmed Alghanim*, 126 F.3d at 19-20. Specifically, Defendant contends that, under the BIT, it only consented to jurisdiction to proceedings governed by the ICSID Convention. Plaintiff disagrees and argues that the BIT allows for arbitration to be conducted by the Additional Facility of the ICSID. Upon review of the treaty, the Court agrees with Plaintiff.

There is no dispute among the parties that ICSID Convention proceedings differ from ICSID Additional Facility proceedings. The tension potentially arises from the varied uses of the terms "Centre" and "ICSID" among those who reference these entities. The International Centre for Settlement of Investment Disputes was established by the World Bank in 1966 under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States. David R. Sedlak, Comment, *ICSID's Resurgence in International Investment Arbitration: Can the Momentum Hold?*, 23 Penn St. Int'l L. Rev. 147, 150 (2004). Proceedings conducted pursuant to this convention are overseen by ICSID and are governed exclusively by

the provisions of the Convention and arbitration rules implementing the Convention. Abby Cohen Smutny et al., *Enforcement of ICSID Convention Arbitral Awards in U.S. Courts*, 43 Pepp. L. Rev. 649, 650 (2016). As an international treaty, the Convention only imposes the arbitration rules established by the Convention to contracting parties—i.e., those who ratified it. *See generally Blue Ridge Investments, L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 n.20 (2d Cir. 2013). Thus, the Convention established arbitration rules and an organization to implement them. Seemingly for this reason, references to the "Centre" or "ICSID" often discuss arbitration pursuant to the Convention rules.

ICSID, however, also conducts arbitration proceedings pursuant to separate rules. For example, the "Additional Facility Rules" govern disputes that involve a party that has not ratified the Convention and noninvestment disputes between contracting parties. *See* Overview of Arbitration under the ICSID Additional Facility, https://icsid.worldbank.org/apps/ICSIDWEB/process/Pages/Overview-ICSID-Additional-Facility-Arbitration.aspx (last visited Sept. 27, 2016). Because of this, references to arbitration by ICSID or the Centre do not exclusively describe proceedings implemented pursuant to the Convention. *See e.g.*, Cohen Smutny et al., supra at 678 n.3 ("ICSID also administers arbitrations that are not conducted under the ICSID Convention, i.e., those that are conducted under the Arbitration Rules of the ICSID Additional Facility.").

With these terms in mind, the Court now turns to the language of the arbitration agreement within the Kyrgyz-Turkey BIT. It states in relevant part:

> 1. Disputes between one of the Parties and one investor of the other Party, in connection with his investment, shall be notified in writing, including a detailed information, by the investor to the recipient Party of the investment. As far as possible, the investor and the concerned Party shall endeavour to settle these disputes by consultations and negotiations in good faith.

5

> 2. If these disputes cannot be settled in this way within six months following the date of the written notification mentioned in paragraph 1, the dispute can be submitted, as the investor may choose, to:
>
> (a) *the International Centre for the Settlement of Investment Disputes (ICSID) set up by the 'Convention on Settlement of Investment Disputes Between States and Nationals of other States', [in case both Parties become signatories of this Convention.]*

ECF No. 113-12 (emphasis added). Defendant argues that, under the BIT, it only consented to submit disputes to the Centre applying the rules of the Convention and not to the Additional Facility arbitration. The Court is not persuaded. Although the treaty does not explicitly mention the Additional Facility and its rules, this type of explicit reference is ultimately unnecessary. By its plain terms, this provision submits disputes to ICSID broadly. The reference to the Convention does not suggest that the arbitration will be governed by the Convention. Instead, it only notes that disputes will be submitted to the organization *set up* by the Convention and that the provision applies if both parties have *signed* the Convention.[4] Given that the organization "set up by the Convention on Settlement of Investment Disputes Between States and Nationals of other States" oversees multiple types of arbitration, the Court sees no valid reason to interpret the clause as limiting its jurisdiction to proceedings governed by the Convention.

Defendant argues that the Court's interpretation will have "far-reaching consequences" and will be "a precedent for the imputation of consent to Additional Facility Rules in any BIT between any two entities wherever only ICSID [arbitration under the Convention] was contemplated." ECF No. 128 at 5. This fear is unfounded and Defendant's prediction is undermined by the various bilateral treaties it included in its submissions. First, the Court's

---

[4] Indeed, it is significant that the provision calls for signatories and not member states. By definition, ICSID arbitration pursuant to the Convention only applies to those who have ratified the Convention. Thus, a condition that both parties sign the Convention instead of ratifying it is logically consistent with the Court's interpretation of the clause.

6

ruling is circumscribed to the Turkey-Kyrgyz Republic bilateral investment treaty. Second, the other treaties submitted by the Defendant demonstrate that the language of the Kyrgyz-Turkey BIT is unique. For example, the treaties between the Defendant and the United States, United Kingdom, India, Sweden, and Finland all explicitly reference the Additional Facility.[5] *See* ECF No. 83-6 to 83-10. Moreover, the remaining treaties are sufficiently dissimilar from the Turkey-Kyrgyz Republic BIT, with each of them containing a different version of a clause limiting the proceedings to those governed by the Convention.[6]

Accordingly, Defendant has failed to meet its heavy burden in proving that the composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties.[7]

## II. Venue and Forum Non Conveniens

Defendant also argues, for the first time, that the complaint should be dismissed on the basis of improper venue and forum non conveniens. First, the court notes that the venue

---

[5] Defendant argues that the explicit reference to the Additional Rules in the other treaties suggests that, without an explicit reference, the parties had no intention to consent to jurisdiction of the Additional Facility. The Court disagrees. First, the Court is reluctant to analogize the actions of the Defendant here with its actions among other nations. There are infinite reasons why the bilateral treaties might differ in language and it would be foolhardy to rely on a custom to undermine the plain language of the agreement before the Court. Moreover, this line of thinking does not necessarily support the Defendant's position as one could present a similarly unpersuasive argument that these other treaties demonstrate Defendant's tacit willingness to consent to arbitration under the Additional Facility rules. As far as custom does matter, however, the Court notes that all but one of these treaties explicitly refers to the Additional Facility as a *subset* of the ICSID (or "Centre"), further undermining the Defendant's primary contention that "Centre" or "ICSID" can only refer to arbitration under the Convention.

[6] The clause in the BIT between the Republic of Indonesia and the Kyrgyz Republic is the most similar, but even this one is easily distinguishable. There, the treaty noted that each party consents to "submit any dispute arising between that Contracting Party and a national of the other Contracting Party concerning an investment of that national in the territory of the former Contracting Party to the International Centre for Settlement of Investment Disputes *for settlement by conciliation or arbitration under* the Convention on the Settlement of Investment Disputes between States and Nationals of other States. . . ." ECF No. 83-11 (emphasis added). The italicized language indicates that the parties agreed to settlement by conciliation or arbitration under the Convention. Therefore, the mention of the Convention in this clause modifies the processes that govern. In the agreement with Turkey, there is no mention of which process is appropriate and the reference to the Convention only describes which organization is overseeing the dispute resolution.

[7] Alternatively, the Court notes that Defendant waived its right to challenge the jurisdiction of the ICSID Additional Faciliy due to its failure to raise that specific argument to the arbitral tribunal.

7

argument is untimely as Defendant failed to assert it in a responsive pleading. *See* Fed. R. Civ. Pro. 12(h)(1). Furthermore, the assertion is meritless as venue is proper in this district. This Court has subject matter jurisdiction of this matter under Section 203 of the FAA. *See* 9 U.S.C. § 203 ("The district courts of the United States . . . shall have original jurisdiction over" actions under the New York Convention). Regarding the New York Convention, "venue is proper in this district because . . . , in the absence of an agreement to the contrary, venue is proper in any court that has subject matter jurisdiction." *Linsen Int'l Ltd. v. Humpuss Sea Transp. PTE LTD*, No. 09 CIV. 10393 GBD, 2011 WL 1795813, at *2 (S.D.N.Y. Apr. 29, 2011); *see also* 9 U.S.C. § 204.

Under the common law doctrine of forum non conveniens, a district court has broad discretion to dismiss a claim "when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (alterations omitted). The Second Circuit has "outlined a three-step process to guide the exercise of that discretion":

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)).

"[A] court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice for forum will stand." *In re Optimal U.S. Litig.*, 837 F.

Supp. 2d 244, 251 (S.D.N.Y.2011) (quoting *Iragorri,* 274 F.3d at 71). "However, 'the degree of deference given to a plaintiff's forum choice varies with the circumstances,'" *id.* (quoting *Iragorri,* 274 F.3d at 71), and "the greatest deference is [usually] afforded a plaintiff's choice of home forum." *Norex Petroleum,* 416 F.3d at 153 (citing *Iragorri,* 274 F.3d at 71). "In assessing the proper measure of deference," courts look to several factors, including, "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district," and whether plaintiff's choice was motivated by tactical forum shopping. *In re Optimal,* 837 F. Supp. 2d at 250-51. Ultimately, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be to gain dismissal whereas the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons the less deference the plaintiff's choice commands." *Id.* (quoting *Palacios v. Coca-Cola Co.,* 757 F. Supp. 2d 347, 352 (S.D.N.Y. 2010)) (quotation marks and ellipses omitted).

Here, the totality of circumstances compel the Court to defer to Sistem's choice of forum. As noted above, this is a summary proceeding to confirm an arbitration award. Thus, it is highly unlikely that Sistem will gain a tactical advantage through the local laws or the inconvenience and expense to the Kyrgyz Republic resulting from litigation in New York. Indeed, this dispute was decided in arbitration and all that remains is the narrow issue of confirmation. That issue has been fully briefed and is ripe for consideration, distinguishing this matter from those that may proceed to trial or require extensive access to witnesses or discovery. Although the events at issue in the underlying arbitration took place outside the United States, that consideration has

less significance here because the facts underlying the dispute are not at issue in this proceeding. *See Crescendo Mar. Co. v. Bank of Commc'ns Co.*, No. 15 CIV. 4481 (JFK), 2016 WL 750351, at *8 (S.D.N.Y. Feb. 22, 2016). Furthermore, Sistem appears to be motivated by genuine considerations of convenience as it contends that Defendant owns assets in the United States—providing Sistem an opportunity to attach and execute against them in the event this Court confirms the arbitration award. *See Leeward Const. Co. v. Am. Univ. of Antigua-Coll. of Med.*, No. 12 CIV. 6280 LAK, 2013 WL 1245549, at *1 (S.D.N.Y. Mar. 26, 2013) (plaintiff's intent to enforce award against "assets it has reason to believe [the defendant] possesses within the United States" was "legitimate reason to bring petition here"), *aff'd sub nom. Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634 (2d Cir. 2016).

With regard to step three, the "burden is on the defendant to show the 'balance of private and public interest factors tilts heavily in favor of the alternative forum. *In re Optimal*, 837 F. Supp. 2d at 252 (citation omitted). The private interest factors include: "(1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive." *Id.* These factors help the court balance "the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal" and having to bring suit in another jurisdiction. *Id.* (quoting *Iragorri*, 274 F.3d at 74).

The public interest factors include: "(1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; (3) avoiding the burden on jurors by having them decide cases that have no impact on their community." *Id.* In applying these factors, "the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence

needed for the trial of these issues." *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 500 (2d Cir. 2002) (quoting *Iragorri*, 274 F.3d at 74). Overall, "[t]he action should be dismissed only if the forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri*, 274 F.3d at 74-75.

Private interest factors do not ordinarily weigh in favor of forum non conveniens dismissal in a summary proceeding to confirm an arbitration award. *Monegasque De Reassurances S.A.M.*, 311 F.3d at 500. As noted above, this case does not involve the typical difficulties associated with conducting discovery or trial abroad. For similar reasons, the public interest factors also weigh against dismissal. Summary proceedings only mildly contribute to court congestion and do not impose a burden on the local community in connection with jury duty. *See Crescendo*, 2016 WL 750351, at *8.

Defendant has not met its burden of showing that the private and public interest factors tilt heavily in favor of the alternative forum. For these reasons, the Court finds that dismissal on forum non conveniens grounds is unwarranted.[8]

---

[8] Courts have routinely denied dismissal on the grounds of forums non conveniens even when the alternative forum is deemed adequate. Here, the parties each present arguments discussing the adequacy of the Kyrgyz courts, the alternative forum. Namely, the arguments revolve around whether Plaintiff would receive a fair hearing in the alternative forum. The Second Circuit has noted that courts have been reluctant to find foreign courts "corrupt" or "biased." *Monegasque De Reassurances*, 311 F.3d at 499. Given that both the first and third level of inquiry have been strongly decided in favor of Plaintiff, the Court declines to evaluate the adequacy of the Kyrgyz Courts.

11

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion (ECF No. 110) and denies Defendant's motion (ECF No. 116). The parties are directed to submit a form of judgment, hopefully on consent. If the parties cannot agree on the form of the judgment, Sistem should submit a proposed judgment on three days' notice.

**SO ORDERED.**

**Dated:**     New York, New York
              September 30, 2016

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**