**EXHIBIT B**

INTERNATIONAL ARBITRATION COURT
AT THE CHAMBER OF COMMERCE AND INDUSTRY OF THE KYRGYZ REPUBLIC

89, Shopokov St., Bishkek, Kyrgyz Republic, 770021
office #1, 4th floor, Mega-Comfort Trade Center
Tel: +996 312 383005; +996 312 438977;
site: www.arbiitr.kg; e-mail: arbitr@elcat.kg

Case number 1-2-282-281010

Bishkek                                                                                   March 16, 2011

The International Arbitration Court at the Chamber of Commerce and Industry of the Kyrgyz Republic (hereinafter referred to as the International Arbitration Court or IAC), composed of Chair N.G. Vilkova and arbitrators - A.M. Chekoshev and T.O. Kenenbayev at the hearing dated March 14, 15 and 16, 2011, considered a **case in respect of a claim of SKMP Ak-Keme Hotel LLC, Bishkek, Kyrgyz Republic, against Sistem Muhendislik Insaat Sanayi ve Ticaret Anonim Sirketi, Izmir, Turkey, for USD 12,500,000 or KGS 583,750,000.**

The following persons took part in the hearing:

**Representatives of the Claimant**: SKMP Ak-Keme Hotel LLC:
-Ruslan Adykanovich Sarymsakov
passport AN 043 7012 issued by the Ministry of Internal Affairs 50-00 dated 16.05.2007
-Representative by power of attorney No. 37 dated 28.10.2010
Indira Sabatbekovna Satarkulova
passport AN 156 3265 issued by the Ministry of Internal Affairs 50-02 dated 19.11.2009
- Representative by power of attorney dated 19.01.2011,
Leyla Alievna Baydaeva
passport AN 095 3006 issued by the Ministry of Internal Affairs 50-05 dated 07.08.2008

**Representatives of the Respondent**; The Respondent, having been duly notified of the time and venue of the hearing in the case, did not appear at the hearing.

**Other persons participating in the hearing as witnesses:**
-Akylbek Usenbekovich Zhaparov, date of birth: 14.09.1964,
registered at the address: 19-2, 12 microdistrict, Bishkek
passport A 067 9326, issued by the Ministry of Internal Affairs 50-02 dated 04.06.2002
-Kanybek Azhekbarov, date of birth: 25.12. 1957,
residing at the address: 38-139, Pyatnitskoye Highway, Mitino microdistrict, Moscow, Russian Federation,
registered at the address: 5-1, Zelenaya St, v.Lebedinovka, Alamudunsky district, Chui oblast,
passport AN 1640513 issued by the Ministry of Internal Affairs 50-58 dated 26.01.2010
-Kairat Zhuniskhanovich Zagibayev, date of birth: 10.05.1958,
driver's license UG 000014139 issued 06.04.2005
-Taalaibek Dzhumashevich Koychumanov, date of birth: 09.01.1956,
registered at the address: 57-12, Toktogul st., Bishkek,

passport AN 033 7553 issued 50-03 dated 27.02.2007
- Samat Zhenishbekovich Imanaliev, date of birth: 10.03.1973,
registered at the address: 56-4, Sh.Rustaveli St, Bishkek
passport AN 080 1888 issued 50-01 dated 15.04.2008
- Leonid Nukhimovich Komarover, date of birth: 17.06. 1955,
residing at the address: Kyrgyzstan, Bishkek, Tynystanov St., 96-10, passport A 287 1333, issued by
Ministry of Internal Affairs 50-02 dated 10.06.1993
-Belek Adykapovich Sarymsakov, date of birth: 23.05.1957,
registered at the address: 137-20, Akhunbaev St., Bishkek,
passport AN 0873 256 issued by the Ministry of Internal Affairs 50-02 dated 04.06.2008
-Valentina Egorovna Harlamova, date of birth: 19.12.1948,
registered at the address: Tolstoy St., Bishkek,
passport AN 039 8404 issued by the Ministry of Internal Affairs 50-00 dated 17.04.2007

**Responsible secretary**: Aigul Tilekovna Dzhakipova

### FACTS OF THE CASE

On October 28, 2010, SKMP Ak-Keme Hotel LLC, Bishkek, Kyrgyz Republic (hereinafter referred to as the Claimant or company Ak-Keme Hotel), applied to the International Arbitration Court, with a statement of claim against Sistem Muhendislik Insaat Sanayi ve Ticaret Anonim Sirketi, Izmir, Turkey (hereinafter referred to as the Respondent or Sistem Muhendislik) for collection of USD 12,500,000.

As follows from the statement of claim and the documents attached thereto, the Claimant and the Respondent concluded: Contract 1 dated February 1, 1993, Special Agreement 1, Appendix 1, Appendix 1a to Special Agreement 1 and Special Agreement No. 2, according to which the Claimant as a Contractor undertook to build a turnkey four-star hotel with 400 beds in Bishkek.

The total price of the Contract was USD 25,000,000. Furthermore, Special Agreement 1 and Appendices 2 and 3 provided for the Respondent to finance and pay for its participation share in the construction in the amount of USD 12,500,000.

In order to carry out construction of the hotel, the parties to the Contract incorporated a Kyrgyz-Turkish joint venture Ak-Keme-Pinara in Bishkek, with the share capital of USD 27,000,000, on the terms of equal contributions of USD 13,500,000.

To secure the contribution of the share of the Kyrgyz participant in the construction of the hotel, the Government of the Kyrgyz Republic granted to the Claimant a loan in the amount of USD 6,000,000 (order No. 303-P dated March 26, 1993), and subsequently another USD 2,700,000 (order of the KR Government No.139-P dated 06.05.1994, No. 187-P dated 13.06.1994). In total, company Ak-Keme was allocated USD 8,700,000 through a credit line provided to the Government of the Kyrgyz Republic in accordance with the Agreement concluded on April 28, 1992 between the Turkish Export Credit Bank and the [National Bank of the Kyrgyz Republic] in the amount of USD 75,000,000

The loan funds allocated to the Kyrgyz party were transferred to a bank account of the Turkish company Sistem Muhendislik, which enabled it to commence construction of the hotel. Construction of the hotel was started with the use of funds invested by company Ak-Keme. Subsequently, Sistem Muhendislik did not submit any documents evidencing compliance with its obligations to contribute its share in the construction of the hotel.

Of the USD 8,700,000 received, USD 3,664,500 was spent on construction and assembly works, purchase of equipment, machinery, inventory, etc., of which Sistem Muhendislik received USD 1,250,000 for the development of the hotel project and USD 575,000 for management and other.

Expenditure of the remaining funds in the amount of USD 5,092,900 has not been confirmed by any document evidencing the use of funds by the Turkish company in accordance with the Contract for construction.

Ak-Keme company sent to Sistem Muhendislik demands for voluntary compliance with its obligations under the construction Contract, for provision of reports and payment documents. However, even requests sent to the Turkish company by government bodies of the Kyrgyz Republic, with demands for facts evidencing investment in the construction project, were left without a reasoned answer.

In this regard, the State Committee of the Kyrgyz Republic on Foreign Investment and Economic Assistance (Goskominvest), by its decision No. 04/338 dated April 12, 96, revoked from the Turkish company Sistem Muhendislik the licence for the right to engage in investment activities in the territory of the Republic.

Having disagreed with the revocation of the licence, Sistem Muhendislik applied to the court with a claim for annulment of the decision of the State Investment Committee. By the Decree of the Supreme Arbitration Court of the Kyrgyz Republic, dated March 18, 1998, Goskominvest's decision dated 12.04.96 No. 04/338 was held to be lawful, due to the absence of confirmation of facts of implementation of investment activities by Sistem Muhendislik in the territory of the Kyrgyz Republic.

In connection with the failure by Sistem Muhendislik to fulfill the obligations stipulated in the Contract for construction of the hotel, in the Charter of the Kyrgyz-Turkish joint-venture Ak-Keme-Pinara and in the Special Agreement, in respect of contribution of share capital in the amount of USD 12,500,000, the Kyrgyz party on its own, at its own expense, continued with the construction of the hotel the total value of which was calculated in the amount of USD 25,000,000, with the involvement of additional funds, loans and other foreign investors. In addition to contributing its own share to the share capital of the joint venture, company Ak-Keme contributed the Turkish company's share, and thus covered the entire cost of construction of the hotel.

Thus, Sistem Muhendislik failed to fulfill the obligations for construction of the hotel, as well as the obligation to contribute USD 12,500,000.

Section 13 of the Contract for construction stipulates that: "*In the event of breach of the Contract by one of the partners unilaterally, the guilty party shall refund the funds invested by the Turkish Export Bank as an advance for construction*". The invested funds were given to company Ak-Keme in the form of a loan on the terms of repayment. On this basis, reimbursement of USD 12,500,000 was to be made by the Turkish company Sistem Muhendislik directly to SKMP Ak-Keme Hotel LLC.

Due to the failure by the Turkish company to contribute USD 12,500,000 to the share capital of the Kyrgyz-Turkish joint venture Ak-Keme-Pinara, the amount of the Contract for construction which Sistem Muhendislik failed to perform is USD 12,500,000.

SKMP Ak-Keme Hotel LLC tried to resolve the dispute with the Turkish company in the course of pre-action procedures, but the Respondent did not react to them.

Considering that its rights had been breached, the Claimant, guided by clause 12 of the Contract for construction and Art. 10, 11 of the Civil Code of the Kyrgyz Republic; Art. 5, 20 of the Law On Arbitral Tribunals in the Kyrgyz Republic; Art. 19, 20 of the Regulations of the International Arbitration Court under Chamber of Commerce of KR, applied to the IAC with a claim for an order that the Respondent - the Turkish company Sistem Muhendislik Insaat Sanayi ve Ticaret Anonim Sirket pay in favor of SKMP Ak-Keme LLC Hotel the amount of USD 12,500,000 (twelve million five hundred thousand) or KGS 583,750,000 (five hundred eighty-three million seven hundred fifty thousand), and for an order against the Respondent to pay costs associated with the arbitration proceedings.

The statement of claim and documents attached thereto, a supplement to the statement of claim, were sent to the Respondent with letters dated 28.10.2010, 10.11.2010, 20.11.2011.

Receipt of the claim materials by the Respondent is evidenced by notifications of the courier service dated 15.11.2010 and 25.01.2011.

The IAC's notice of receipt of the statement of claim was sent with letters No. 478 dated December 29, 2010 and 09.11.2010. Receipt by the Respondent of the notice of receipt by the IAC of the claim file is evidenced by the certificate of TNT courier service dated 11.11.2010.

Notices were sent by the IAC's letters No. 101 dated February 24, 2011, No. 109 dated February 28, 2011. Receipt by the Respondent of notice No. 101 dated February 24, 2011 is evidenced by notice from DHL courier service dated 04.03.2011. Refusal of the Respondent to accept notice No. 109 dated February 28, 2011 is evidenced by notice from DHL courier service dated 01.03.2011.

Two additional notices were sent by the IAC to the Respondent by fax in letters No. 137 dated March 5, 2011, No. 140 dated March 11, 2011. Receipt by the Respondent of those faxes is evidenced by a printout attached to the file.

According to article 25 of the IAC Rules of Procedure, a tribunal was formed comprising Chair P.G. Vilkova and arbitrators A.M. Chekoshev and T.O. Kenenbayev.    Y.D. Kim, S.Ch. Omuraliev and V.N. Solomakha were appointed as substitute chair and arbitrators.   No objections have been raised as to composition of the tribunal.

Arbitration fees were paid by the Claimant in accordance with the Provision on Arbitration Fees and Expenses, in the amount of USD 74,439,14.

The hearing was held on March 14-16, 2011, with the participation of the Claimant's representatives. The Respondent, which had been duly informed of the time and venue of the hearing, did not appear at the hearing. The Representative of the Claimant insisted on review of the case on the merits in the absence of representatives of the Respondent.

During the hearing, the Claimant affirmed its claims set forth in the statement of claim, requested an order against the Respondent for the amount of USD 12,500,000 (Twelve million five hundred thousand) or KGS 583,750,000 (Five hundred eighty-three million seven hundred fifty thousand), and also an order against the Respondent for costs associated with the arbitration proceedings.

No defence or objection was received from the Respondent.

At the IAC hearing, the representatives of the Claimant affirmed the claims as stated. The IAC heard explanations of the witnesses.

### REASONS FOR THE AWARD

Having reviewed the case file and having heard the representatives of the Claimant, as well as the witnesses, the International Arbitration Court came to the following conclusions.

1. Regarding lex arbitri, the IAC has found that because arbitration proceedings were held in Bishkek, the Kyrgyz Republic, the law applicable to the procedure of the arbitration proceedings is the Law On the Arbitral Tribunals in the Kyrgyz Republic dated July 30, 2002 , No.135, as amended by the Laws of the Kyrgyz Republic dated May 15, 2003, No.93 and dated June 11, 2004, No.73 (hereinafter referred to as the Law On Arbitral Tribunals), which regulates the activities of arbitral tribunals in resolution of disputes.

2. Having considered the issue of the absence of representatives of the Respondent at the hearing, the International Arbitration Court has found as following.

The Claimant's statement of claim was received by the IAC on October 28, 2010.

In accordance with Article 24 of the IAC Regulations, by letter No. 478 dated October 29, 2010 (TNT Express consignment note No. GD 398 535 442 WW dated 30.10.2010), the IAC Executive Secretary sent to the Respondent a notice of filing of the statement of claim, the statement of claim itself and proposed that within 15 days from the date of receipt of the notice, the Respondent should submit his defence supported by the relevant evidence. Furthermore, in accordance with Art. 24 of the IAC Rules of Procedure, the Respondent must, within the same time, provide the names and surnames of an

arbitrator and of an alternate arbitrator, selected by him, or request that an arbitrator and an alternate arbitrator be appointed for him by the IAC Chairman. The said letter with the statement of claim attached, was received by the Respondent on November 10, 2010 by TNT Express delivery (TNT Express certificate of delivery dated November 11, 2011). The said letter of the IAC Responsible Secretary remained unanswered. The statement of claim was sent by the Claimant via EMS Kyrgyzpost, consignment number EE 0000445005 KG dated October 28, 2010 and was received by the Respondent on November 15, 2010.

The Respondent did not make use of the rights afforded to it by art. 6 of the IAC Regulations and did not provide written explanations, as provided for by Art. 24 of the IAC Rules of Procedure. Therefore, on the basis of art. 25.2 of the IAC Rules of Procedure, by the decision of the IAC Chairman, T.O. Kenenbaev was appointed as the arbitrator for the Respondent.

Supplement No. 1 to the statement of claim was sent by the Claimant with a letter dated January 20, 2011, to the Respondent by TNT Express courier service. That letter with attached Supplement No. 1 to the statement of claim and relevant materials, was received by the Respondent on January 25, 2011, according to TNT Express courier delivery data, consignment number - GD 395 745 844 WW.

The notice of the time and date of hearing scheduled for March 14, 15 and 16, was sent by the IAC to the Respondent on February 24, 2011 (the IAC letter No. 101 dated February 24, 2011, airway bill No. 2917941261), which was delivered to the Respondent and received by it on March 1, 2011, which is evidenced by the DHL courier service notice dated March 4, 2011, stating that Leila Guralp signed the receipt of that letter).  Accordingly, the Respondent was notified of the date, time and venue of the hearing 10 days before the date of the hearing, in accordance with Art. 29.1 of the IAC Rules of Procedure. Further, by letter No. 137 dated February 28, 2011, the IAC notified of the composition of the tribunal, on the recognition by the arbitrators that they had jurisdiction, on the acceptance of the statement of claim and on the scheduling of the hearing date for March 14-16, 2011. However, according to the notice from DHL courier delivery dated March 11, 2011, the Respondent refused to accept those documents twice.  The IAC repeated the sending of the said letter on March 5, 2011 by fax and e-mail. Further, by letter No. 140 dated March 11, 2011, the IAC sent by fax:

- a determination on the recognition by the arbitrators that they have jurisdiction,

- a determination on the acceptance of the statement of claim to the proceedings, and

- a determination on the scheduling of the date of the hearing.

Accordingly, the IAC notified the Respondent of the date of the hearing in a timely manner in accordance with Clause 1, Article. 29 of the IAC Rules of Procedure, however, the Respondent refused to accept the notice.

As provided for in paragraph 2 of Art. 34 of the IAC Rules of Procedure, non-appearance by a party which has been duly notified of the time and venue of the hearing shall not preclude trial of the case or the making of an award, unless the absent party has submitted a written application to adjourn the hearing in the case for a good reason.

Because no such application had been received from the Respondent, and the Claimant insisted upon review of the case, on the basis of paragraph 2 of Art. 34 of the IAC Rules of Procedure, the IAC considered it proper to hold the arbitration trial in the absence of representatives of the Respondent.

3. As to the issue of jurisdiction of the International Arbitration Court to hear this dispute, the tribunal found the following.

In the statement of claim, the Claimant claimed in the IAC KGS 583,750,000 (Five hundred eighty-three million seven hundred fifty thousand) from the Respondent; in Supplement No. 1, the Claimant claimed from the Respondent USD 12,500,000 (twelve million five hundred thousand) or KGS 583,750,000 (Five hundred eighty three million seven hundred fifty thousand).

In support of the jurisdiction of the IAC to consider the said claim, the Claimant referred to two contracts: the Agreement on Incorporation and Activities of the Kyrgyz-Turkish Joint Venture dated

May 27, 1992 and Contract 1 dated February 1, 1993 on construction in Bishkek (Kyrgyz Republic) of a four star hotel with 400 beds.

Having considered the content of the Agreement on Incorporation and Activities of the Kyrgyz-Turkish Joint Venture dated May 27, 1992, the IAC noted the following. In that Agreement, the parties agreed to establish a joint venture and determined the subject-matter of its activities. There is no arbitration clause in that Agreement. Subsequently, a dispute arose between the parties due to the fact that the Turkish side, the Respondent in the present case, did not make a contribution to the share capital of the joint venture. Therefore, in the statement of claim, the Claimant claimed from the Respondent the amount of USD 12,500,000 representing the contribution to the share capital of the joint venture which the Respondent had failed to make.

According to Art. 5 of the Law On Arbitral Tribunals in the Kyrgyz Republic, a dispute may be submitted for the resolution by an arbitration court if there is an agreement of the parties to refer the dispute to that arbitration court or by operation of law. As provided for in paragraph 3, Art. 7 of the same Law, the arbitration agreement should contain a provision stating that any dispute, controversy or claim arising out of a dispute between the parties is subject to review by an arbitration court, as well as the name of the arbitration court which is to consider the dispute.

Because the parties to the Agreement on Incorporation and Activities of the Kyrgyz-Turkish Joint Venture dated May 27, 1992, did not agree a procedure for the resolution of disputes by way of arbitration proceedings, - in accordance with Art. 5 of the Law On Arbitral Tribunals and Article 3 of the IAC Rules of Procedure, the dispute which has arisen between them concerning the Respondent's failure to make a contribution to the share capital of the joint venture, cannot be considered by the IAC on the grounds that it has no jurisdiction to consider that dispute.

The IAC then considered Contract 1 dated February 1, 1993, Special Agreement 1 for the construction of the hotel for 400 beds in Bishkek, Ak-Keme-Pinara and Special Agreement 2.

As follows from the content of Contract 1, the dispute between the Parties arose from civil law relations of a contract for construction and falls within the category of disputes which, according to article 1 of the Law on Arbitral Tribunals, clause 9 of the IAC Rules of Procedure of the Chamber of Commerce of the [Kyrgyz Republic] and sub-clauses 2.2-2.4 of Article 2 of the IAC Rules of Procedure, can be referred by agreement of the parties for consideration by an arbitration court.

Clause 12 of Contract 1 dated February 1, 1993, stipulates that "all disputes and disagreements that may arise during the execution of this Contract, shall be resolved by the Parties amicably, and if this is not possible, then by the Arbitration Commission of the Chamber of Commerce of the Republic of Kyrgyzstan, in accordance with the rules of procedure of the above Commission, whose awards shall be binding on both Parties and shall not subject to appeal".

The content of the above arbitration clause evidences a clearly expressed intention of the parties to refer their dispute for resolution by an arbitration court operating within the Chamber of Commerce of the Republic of Kyrgyzstan, which the Parties referred to as an "Arbitration Commission". In the Kyrgyz Republic, there is International Arbitration Court operating within the Chamber of Commerce and Industry. The inaccurate name, in the arbitration clause of Contract 1, of the arbitration court does not alter the intention of the parties to apply for the resolution of disputes to a body which permanently operates within the Chamber of Commerce and Industry of the Republic of Kyrgyzstan. Moreover, there is no other arbitration court within the Chamber of Commerce and Industry of the Kyrgyz Republic.

The IAC notes that the content of the arbitration clause of Contract 1 complies with the requirements of Art. 5 and 7 of the Law On Arbitral Tribunals, Art. 3 of the IAC Rules of Procedure: firstly, it contains an agreement of the parties refer disputes to an arbitration court, it contains a provision stating that any dispute, disagreement or claim arising out of a dispute between the parties shall be subject to consideration by an arbitration court, and the name of the arbitration court which shall consider the dispute.

Regarding the composition of the parties to the arbitration agreement, the IAC noted the following.

Contract 1 dated February 1, 1993, which contains the arbitration agreement, Special Agreement 1, Additional Agreements 1 and 2, were signed by company Ak-Keme and by Sistem Muhendislik registered in Istanbul, Turkey (Sistem Muhendislik lnsaat Sanayi ve Ticaret Anonim Sirketi).

The claim was filed by SKMP Ak-Keme Hotel LLC, registered in Bishkek, Mira Avenue, 93, against the Respondent (Sistem Muhendislik lnsaat Sanayi ve Ticaret Anonim Sirketi) registered in Izmir, Turkey.

As follows from the documents submitted by the Claimant, the Respondent's firm changed its location and was re-registered in Izmir, Turkey,

The IAC considers it appropriate to determine the status of SKMP Ak-Keme Hotel LLC in the case, namely: whether the arbitration agreement contained in Contract 1 dated February 1, 1993, Special Agreement 1 and Additional agreements 1 and 2, which have been concluded, is valid for SKMP Ak-Keme Hotel LLC.

In the conflict of laws rules of many countries, the generally accepted principle is that personal law of a legal entity is considered to be law of the country where the legal entity is incorporated. This principle is also reflected in Art. 1184 of the Civil Code of the Kyrgyz Republic (hereinafter referred to as the Civil Code of the Kyrgyz Republic). Art. 1185 of the Civil Code of the Kyrgyz Republic stipulates that the civil legal capacity of a legal entity shall be determined by law of the legal entity. Since Ak-Keme JSC, Ak-Keme-Pinara JV and SKMP Ak-Keme Hotel LLC were incorporated in the Kyrgyz Republic, their personal law is law of the Kyrgyz Republic, in particular, the Civil Code of the Kyrgyz Republic, and their civil legal status, that is, the ability to acquire and exercise civil rights through their actions, to create civil duties for themselves and to comply with them, should be determined according to that law.

As indicated in the statement of claim and Supplement No. 1 and as explained by the Claimant's representative in the proceedings, there was a transfer of creditor's rights from one person to another. In theory and practice of international arbitration, it is generally accepted that with the transfer of the creditor's rights from one person to another, the transfer of the arbitration agreement also occurs.

The law (Article 314 of the Civil Code of the Kyrgyz Republic) provides for two types of grounds for the transfer of creditor's rights to another person. One of them is the transfer by the creditor of the right (claim) to another person under a transaction (assignment of claim); another ground is the transfer of the claim to another person by operation of law.

As follows from the facts of the case and not contested by the Respondent, during the period from 1993 to the present time, events occurred that have affected not only the legal status of Ak-Keme JSC, but also relations between the parties in connection with the hotel.

In considering this issue, the IAC proceeds on the basis of legal facts, which are as follows. The Department for Registration and Liquidation of Enterprises under the State Property Fund (hereinafter the Department) filed a claim with the Arbitration Court of Bishkek to hold Ak-Keme JSC to be bankrupt.

Although the decision of the Arbitration Court of Bishkek dated November 6, 1998, denied the claim of the Department, the Supreme Arbitration Court of the Kyrgyz Republic on December 10, 1998, vacated the above decision of the Arbitration Court of Bishkek and held Ak-Keme JSC to be insolvent. On July 1, 1999, the Government of the Kyrgyz Republic, the Government of Turkey, Special Administrator of Ak-Keme JSC and management of the Respondent's company entered into a General Agreement and a Sale and Purchase Agreement for a 100% stake in the share capital of the newly incorporated Ak-Keme de Lux Hotel LLC. On July 2, 1999, the same parties entered into an agreement whereby the Government of the Kyrgyz Republic and the Special Administrator assigned to the Respondent the right to claim against Ak-Keme JSC debts in the amount of USD 10,985,799 (Ten million nine hundred eighty five thousand seven hundred ninety nine) (including USD 8,700,000 loan amount, USD 2,285,799 loan interests) and KGS 19,571,000 contributed by the Government of the Kyrgyz Republic. On July 1, 1999, the Special Administrator of Ak-Keme JSC and the Respondent entered into a Sale and Purchase Agreement of the said share.

Resolution of the Legislative Assembly of the Jogorku Kenesh [of the Kyrgyz Republic] No. 874-11 dated October 7, 2002, determined that the sale of assets of Ak-Keme JSC was carried out with gross violations of laws of the Kyrgyz Republic.

On June 27, 2005, by the decision of the Leninskiy District Court of Bishkek, the consequences of the invalidity of a void transaction - the Sale and Purchase Agreement of the interest - were applied and the parties were returned to their original position. Despite the Respondent's appeals to the higher judicial instances, on November 2, 2005, by the decision of the Supreme Court of the Kyrgyz Republic the said decision dated June 27, 2005, as well as the determination of the judicial board of the Bishkek City Court dated August 30, 2005, were upheld. The Respondent's supervisory appeal was dismissed.

Because the Respondent did not perform its obligations to complete construction of the hotel, including financing of construction (as provided for by Contract 1 dated February 1, 1993, Special Agreement 1 and Additional Agreements 1 and 2), liquidation of Ak-Keme - Pinara JV occurred, and in 1995 re-registration of Ak-Keme JSC into Ak-Keme CJSC was performed (date of the initial registration 16.10.1995). The incomplete hotel complex owned by the previously liquidated Ak-Keme-Pinara JV was reflected on the balance of the re-registered Ak-Keme CJSC. Subsequently, in 1997, Ak-Keme CJSC contributed an incomplete hotel complex as its share into the capital of SKMP Ak-Keme Hotel LLC.

Therefore, a transfer of debt by the debtor, as well as an assignment of the creditor's claim, has occurred. Namely, the transfer of accounts payable of Ak-Keme CJSC to SKMP Ak-Keme Hotel LLC, which is the Claimant in the present case, was effected.

The IAC concludes that the right of claim of Ak-Keme CJSC against the Respondent, including the arbitration agreement of Contract 1 dated February 01, 1993, Special Agreement 1 on construction of the hotel with 400 beds in Bishkek and Special Agreement 2, was transferred to SKMP Ak-Keme Hotel LLC.

Therefore, the IAC on the basis of paragraph 1 of Art. 14 of the Law On Arbitral Tribunals, considers that it has jurisdiction to consider the dispute arising out of Contract 1 dated February 1, 1993, Special Agreement 1 for construction of the hotel for 400 beds in Bishkek and Special Agreement 2.

4. Having considered the Claimant's request for a freezing order, and an order of enforcement in respect of, the property owned by the Respondent - Feye Pinara (Hotel Feye Pinara), at the address of Turgutreis Palamut mevkii 48960 Bodrum / Mugla / Turkey, the IAC noted the following. This request for relief was made by the Claimant in accordance with the requirements of Art. 22 of the Law On Arbitral Tribunals in the Kyrgyz Republic. According to that article, if the parties have not otherwise agreed, the arbitration court, at the request of either party, may order that the party takes such measures to secure the claim in relation to the subject-matter of the dispute, as it deems necessary.

Given the procedural history of the relationship of the parties and the lack of a relationship between them, the IAC on the basis of Art. 22 of the Law On Arbitral Tribunals in the Kyrgyz Republic, considers it to be advisable to take the following measures to secure the claim, namely, to prohibit the Respondent - Sistem Muhendislik Insaat Sanayi ve Ticaret A.S. to dispose of the property - Hotel Feye Pinara, owned by the Respondent and located at the address Turgutreis Palamut mevkii 48960 Bodrum / Mugla / Turkey. When making this decision, the IAC proceeded on the basis of the location of the said property, as stated on the website of the said hotel.

5. With regards to the law applicable to the legal relations of the parties, the IAC notes that there is no agreement on applicable law in Contract 1 dated February 1, 1993, Special Agreements 1 and 2, signed by the parties.

In the circumstances, the IAC is guided by clause 3 of Art. 6 of the Law On Arbitral Tribunals in the Kyrgyz Republic and paragraph 2.6 of Art. 2 of the IAC Rules of Procedure, according to which, in the absence of an agreement on applicable law, the arbitration court independently determines the rules of law that are applicable, when considering the dispute. The IAC makes a decision on the merits of the

dispute in accordance with the applicable law, and insofar as they are not regulated by the applicable law, then in accordance with business custom.

Because the parties made no agreement on applicable law, the IAC has the authority to independently determine the legal norms to be applied, when considering this dispute.

The IAC proceeds from the requirements of Art. 1167 of the Civil Code of the Kyrgyz Republic, according to which law applicable to civil law relations with the participation of foreign citizens or foreign legal entities or burdened by another foreign element, shall be determined on the basis of that code, other laws, international treaties and recognized international custom as well as based on agreements of the parties.

Because there are no international treaties between the Kyrgyz Republic and Turkey regulating the procedure for determining law applicable to those relations, and because applicable law has not been determined by the parties, the IAC has the authority to independently determine law applicable to the resolution of this dispute.

Being guided by the requirements of paragraph 2.2. Art. 1199 of the Civil Code of the Kyrgyz Republic, according to which absent consent of the parties to the agreement on applicable law, notwithstanding provisions of paragraph 1 of this article, the following shall apply: to a construction contract - law of the country in which the result of the contract is to be created, the IAC, noting that the result as a hotel was created in the territory of the Kyrgyz Republic in Bishkek, comes to the conclusion that when resolving this dispute, the law of the Kyrgyz Republic, primarily Civil Code of [Kyrgyz Republic], shall apply.

6. Although according to the rules on applicable law of paragraph 1 of Art. 215 of the Civil Code of the Kyrgyz Republic, the statute of limitations shall be applied upon motion of a party to the proceedings, and the Respondent made no objection in this matter, the IAC considers it appropriate to consider the issue.

The investigation into the contractual relationships between the parties leads to a conclusion that Special Agreement 1 and Contract 1 for construction dated February 1, 1993, envisaged turnkey construction of a four-star hotel in Bishkek. Under the aforementioned Contract 1 for construction dated February 1, 1993, the time of performance of obligations by the Respondent is the time of the Act of the state commission on commissioning of the finished turnkey construction.

The term of those documents was not defined, therefore, according to Art. 385 of the Civil Code of the Kyrgyz Republic, they are deemed to remain in effect until completion of performance by the parties of their obligations, which time is determined therein. None of the parties to the contractual relationship notified of a refusal to perform Contract 1 dated February 1, 1993, Special Agreement 1, or Additional Agreements 1 and 2.

The fact that construction of the hotel was not completed is evidenced by the absence of the final state acceptance of the hotel. On December 8, 1995, a commission comprising representatives of Ak-Keme JSC and Sistem Muhendislik (represented by Mr. L. Hazer) recorded multiple violations by the Respondent and confirmed the fact that the Respondent failed to perform the turnkey construction of the hotel. Accordingly, the obligations which the Respondent undertook under the concluded Contract 1 dated February 1, 1993, and Special Agreement 1, Additional Agreements 1 and 2, were not performed, which was recognized by the Respondent in the said Act dated December 8, 1995.

According to Art. 216 of the Civil Code of the Kyrgyz Republic on obligations with a specific deadline, the limitation period begins from the end of the term for compliance. Because there was no performance under this Contract 1, and because none of the parties refused to perform, the Contract continues to be in force. Therefore, as follows from the requirements of paragraph 1 of Art. 216 of the Civil Code of the Kyrgyz Republic, the limitation period has not started, and the Claimant filed the claim in a timely manner.

7. On the merits of the Claimant's claim, the IAC noted the following. The dispute between the parties arose from Contract 1 dated February 1, 1993, for construction of the hotel in Bishkek with 400 beds (with subsequent supplements).

Financing of construction of the hotel could be carried out in two ways. First, by the Respondent making a contribution into the share capital of the joint venture incorporated by the parties. Although the consideration of this issue is beyond IAC's jurisdiction, as noted in clause 2 of these Reasons, the IAC takes into consideration the information of the Claimant that, as follows from the case file and not challenged by the Respondent, its contribution in the share capital has not been paid up.

Second, through implementation of a loan agreement. Works on this object were financed within the framework of the loan provided by the Eximbank of Turkey to the Government of the Kyrgyz Republic in the amount of USD 75,000,000. In the list of priority projects for which funds were allocated from this credit line, the Government of the Kyrgyz Republic allocated USD 8,700,000 to the Claimant. The Claimant was to return that amount to the Government of the Kyrgyz Republic, which, in its turn, was to repay the loan to Eximbank of Turkey.

The funds allocated to the Claimant were transferred to the Respondent's bank account, which enabled construction of the hotel to begin.

The works provided for by Contract 1 dated February 1, 1993, Special Agreement 1 and Additional Agreements 1 and 2, were to be financed by the Responder as stipulated, in particular, in clause 2.2.4: it is specified that the amount received by the Contractor (the Respondent in this case) in accordance with the Special Agreement 1, Appendixes 2 and 3, amounted to USD 12,500,000. In particular, paragraph 3 of the said Special Agreement provides that the Respondent, as contribution of its share in the construction, shall produce preliminary and working projects, ensure supply of labor, building materials, equipment, furniture, pay in hard currency for transport, and pay workers' salaries.

Because the Respondent at that time announced that it lacked funds, and considering that the term for the use of the loan was limited, the Claimant, having received a promise from the Respondent that its financial obligations would be performed, began construction of the hotel using USD 8,700,000 received from the Government of the Kyrgyz Republic and hoping that the Respondent will reimburse it the funds.

The Claimant transferred USD 8,700,000 to the Respondent's account, which is evidenced by certificates of progressive payments from Eximbank of Turkey and represented payment for the services that were to be provided by the Respondent. In particular, by an Additional Agreement (clause 3, paragraph 3), it was agreed that Sistem Muhendislik would pay Ak-Keme within 30 days from the date of confirmation by the [National Bank of the Kyrgyz Republic] and Eximbank and introduction of an additional loan of USD 2,700,000, the cost of materials, provided and brought to construction by Ak-Keme company in accordance with Appendix 1 prior to the effective date of that agreement, which were used for construction.

However, the Respondent, in breach of the obligations it undertook, did not submit reports on the expenditure of funds for the construction.

On October 19, 1995, the State Tax Inspection of the Leninskiy district of Bishkek, in the presence of the head of the Respondent, Mr. Fehim Yenizhe, carried out an inspection of the Respondent's company. The Act of the inspection conducted, signed by Mr. Fehim Enizhe and chief accountant, found, in particular, that Sistem Muhendislik had received for the construction of the hotel from Ak-Keme JSC, at the time of the Act, USD 9,017,685. However, documents confirming acquisition and import of building materials and equipment into the Kyrgyz Republic was not presented.

In support of the allegation that the Respondent did not fulfill its obligations to finance construction of the hotel, the Claimant presented the following evidence: Act No. 266/92 of the Republican State Examination Department Narksapat dated November 27, 1992, on failure to approve the working draft of the construction object, the letter of the [National Bank of the Kyrgyz Republic] on the results of inspection of the Respondent's activities, letter of the State Customs Inspection of the Kyrgyz Republic dated September 7, 1995, about the absence of export-import operations of the Respondent, letter from

the National Statistical Committee of the Kyrgyz Republic No. 10-14 / 954 dated October 25, 1995, on the import of goods in the amount of USD 1,019,268, certificate of commission of the State Committee for Architecture and Construction of the Kyrgyz Republic dated November 29, 1995, about the disagreements of the parties on the issues of shared construction.

As a result, as indicated in the letter of the National Statistical Committee No. 10-14 / 954 dated October 25, 1995, it was determined that of the funds transferred by the Claimant to the Respondent, which the Claimant had obtained as a loan from the Government of the Kyrgyz Republic and which the Claimant was obliged to repay to the Government of the Kyrgyz Republic, the only recorded instance of import of goods by Sistem Muhendislik was in 1995, for the total of USD 1,019,268.

At the request of the Claimant, the State Customs Inspection of the Kyrgyz Republic reported: "For the period from January 1, 1994, to December 31, 1994, Sistem Muhendislik did not perform export-import operations at all".

Thus, the only evidence of financing by the Respondent of construction works is the letter of the National Statistical Committee No. 10-14 / 954 dated October 25, 1995, confirming the expenditure of funds received by the Respondent from the Claimant in the amount of USD 1,019,268.

The IAC notes that the available evidence in the case confirms the Respondent's participation in financing the project in the amount of USD 1,019,268. Thus, the Respondent breached its obligations, provided for not only by Contract 1 and Special Agreement 1 and Additional Agreements 1 and 2, but also by Articles 662, 665, 667 of the Civil Code of the Kyrgyz Republic.

Because the Respondent has breached its obligations under Contract 1, Special Agreement 1 and Additional Agreements 1 and 2, under Clause 299, 662, 665, 667 of the Civil Code of the Kyrgyz Republic, the Claimant's claim in the amount of USD 11,480,732 is to be granted and the Respondent must pay the Claimant the amount of USD 11,480,732.

The Claimant's other claims are to be denied.

The claim for annual interest on the required amount of USD 12,500,000 at the LIBOR rate, asserted in the statement of claim, was not supported by the Claimant, and its representative at the IAC hearing submitted that that claim was withdrawn. Therefore, the claim for annual interest, which was not supported by the Claimant, will not be heard.

8. Having reviewed the Claimant's claim for arbitration fees (including the registration fee), the IAC noted that the Claimant, in accordance with Clauses 1-3 of the Provision on Arbitration Expenses and IAC Fees, upon filing a claim paid the arbitration fee (including the registration fee) in the amount of USD 73,924.

Because the Claimant's claim was partially granted, the Respondent, in accordance with Clause 6.2 of the said Provision, is to compensate the Claimant's expenses in proportion to the satisfied claims, i.e. in the amount of USD 68,356.

9. Having considered the Claimant's claim for the Respondent to compensate expenses relating to the protection of its interests through legal representatives, the IAC on the basis of Clause 9 of the Provision on Arbitration Expenses and IAC Fees, taking into account the complexity of the case and the volume of pleadings, considered it reasonable and fair to impose on the Respondent USD 5,000 in costs incurred by the Respondent.

10. Because the person who was selected as Chair of the arbitral tribunal is permanently located outside the place of the IAG hearing, , in accordance with Clause 7.4 of the Provision on Arbitration Costs and IAC Fees, each party must make an advance payment of the costs of her participation in the arbitration. The IAC concluded that the costs of attendance of the hearing by the chair of the arbitration court amounted to USD 1,624. The Respondent did not pay its equal share of the said costs. That amount was fully paid by the Claimant. Therefore, on the basis of Clause 7.4 of the Provision on Arbitration Costs and IAC Fees, the Respondent must compensate the Claimant for the amount of USD 812.

Based on the foregoing and guided by Art. 22, 28, 29, 31, 39 of the Law On Arbitral Tribunals in the Kyrgyz Republic, Articles 36, 44-47 of the IAC Rules of Procedure, the International Arbitration Court has decided:

## RESOLUTIVE PART OF THE AWARD:

1. The claims of SKMP Ak-Keme Hotel LLC, Bishkek, Kyrgyz Republic, against Sistem Muhendislik Insaat Sanayi ve Ticaret A. S., Izmir, Turkey for collection of USD 12,500,000 (Twelve million five hundred thousand) shall be granted partially.

2. To order Sistem Muhendislik Insaat Sanayi ve Ticaret A. S., Izmir, Turkey, to pay in favor of SKMP Ak-Keme Hotel LLC, Bishkek , Kyrgyz Republic, USD 11,554,900 (Eleven million five hundred fifty four thousand nine hundred), including:

- USD 11,480,732 (Eleven million four hundred eighty thousand seven hundred thirty two) in respect of the Claimant's principal claim;

- USD 68.356 (sixty-eight thousand three hundred and fifty-six) in respect of the Claimant's costs for payment of the arbitration and registration fees;

- USD 5,000 (five thousand) in compensation of the Claimant's costs incurred in connection with the protection of its interests through legal representatives;

- USD 812 (Eight hundred and twelve) in compensation of the Claimant's cost of payment for the Chair to participate in the arbitration hearing.

3. To grant the Claimant's claim for measures of protection by prohibiting the Respondent - Sistem Muhendislik Insaat Sanayi ve Ticaret A.S.- to dispose of the property - Feye Pinara Hotel, belonging to the Respondent and located: Turgutreis Palamut mevkii 48960 Bodrum / Mugla / Turkey.

4. To deny the Claimant's other claims.

5. The Claimant's claim for annual interest against the Respondent shall be left without consideration.

6. The award shall take effect forthwith, shall be final and shall not be subject to appeal.

This award was drawn up and signed in three originals, one of which is designated for safekeeping in the archives of the International Arbitration Court, one for the Claimant and one for the Respondent.

Chair of the Arbitration Court:      N.G. Vilkova (signature and stamp)

Arbitrators: T.O. Kenenbayev   (signature)     A.M. Chekoshev (signature)

Bound and numbered

On twelve (12) sheets

Executive secretary

S. Tuisunbek

(signature and stamp)



© Translation from Russian into English is organized by Translation Center GMC Translation Service LLC
E-mail: gmezakaz@mail.ru; website: www.gmc-translation.com, www.gmc-translation.ru
Tel.: + 996 (312) 900-666, 90-10-10; 600-666 WhatsApp +996 (777) 900-666
Address: 112/3 Kiyevskaya str.,720001, Bishkek, Kyrgyz Republic
ИП код HBBOA

Версия закладчика

**МЕЖДУНАРОДНЫЙ ТРЕТЕЙСКИЙ СУД
ПРИ ТОРГОВО-ПРОМЫШЛЕННОЙ ПАЛАТЕ КЫРГЫЗСКОЙ РЕСПУБЛИКИ**
720021, Кыргызская Республика, г. Бишкек, ул. Шопокова, 89.
Торговый центр «Мега-комфорт», 4 этаж, офис 1,
тел. +996 (312) 383005; +996 (312) 438977, site: www.arbitr.kg, e-mail: arbitr@elcat.kg.

Дело № 1-2-282-281010

город Бишкек                                                                «16» марта 2011 года

        Международный третейский суд при Торгово-промышленной палате Кыргызской Республики (далее «Международный третейский суд» или «МТС») в составе председателя Н.Г. Вилковой и арбитров А.М. Чекоцева и Т.О. Кененбаева рассмотрел в заседаниях 14, 15 и 16 марта 2011 года дело по иску ОсОО СКМП Отель «Ак-Кеме», г. Бишкек, Кыргызская Республика, к фирме Систем Мюхендислик Иншаат Санайи ве Тиджарет А.Ш.», г. Измир, Турция (Sistem Muhendislik Insaat Sanayi ve Ticaret Anonim Şirketi, Izmir, Turkiye), о взыскании 12 500 000 долл. США или 583 750 000 сомов.

        В заседаниях по делу приняли участие:
**Представители истца:** ОсОО СКМП Отель «Ак-Кеме»:
        - Сарымсаков Руслан Адыканович
        паспорт AN 043 7012 выдан МВД 50-00 от 16.05.2007 г.
        - Представитель по доверенности № 37 от 28.10.2010 г.
        Сатаркулова Индира Сабатбековна,
        паспорт AN 156 3265 выдан МВД 50-02 от 19.11.2009 г.
        - Представитель по доверенности от 19.01.2011 г.
        Байдаева Лейла Алиевна,
        паспорт AN 095 3006 выдан МВД 50-05 от 07.08.2008 г.

**Представители ответчика:** Ответчик, надлежащим образом уведомленный о времени и месте слушания дела, в заседании представлен не был.

**Другие лица, участвующие в заседании в качестве свидетелей:**
        - Жапаров Акылбек Усенбекович, 14.09.1964 г.р.,
        прописан по адресу: г.Бишкек, 12 мкр., д.19, кв.2,
        паспорт Л 067 9326 выдан МВД 50-02 от 04.06.2002 г.
        - Ажекбаров Каныбек, 25.12.1957 г.р.,
        проживает по адресу: Российская Федерация,
        г.Москва, мкр.Митино, Пятницкое шоссе, д. 38, кв.139,
        прописан по адресу: Чуйская область,
        Аламудунский район, с.Лебединовка, ул.Зеленая, д.5, кв.1,
        паспорт AN 1640513 выдан МВД 50-58 от 26.01.2010 г.
        - Загибаев Кайрат Жунисханович, 10.05.1958 г.р.,
        водительское удостоверение UG 000014139 выданное 06.04.2005 г.
        - Койчуманов Таалайбек Джумашевич, 09.01.1956 г.р.,
        прописан по адресу: г.Бишкек, ул.Токтогула, д.57, кв.12,
        паспорт AN 033 7553 выдан МВД 50-03 от 27.02.2007 г.
        - Иманалиев Самат Женишбекович, 10.03.1973 г.р.,

прописан по адресу: г.Бишкек, ул.Ш.Руставели, д.56, кв.4,
паспорт AN 080 1888 выдан 50-01от 15.04.2008 г.
- Комаровер Леонид Нухимович, 17.06.1955 г.р.,
проживающий по адресу: КР, г.Бишкек, ул.Тыныстанова, д.96, кв.10.,
паспорт А 287 1333, выдан МВД 50-02 от 10.06.1993 г.
- Сарымсаков Белек Адыкапович, 23.05.1957 г.р.,
прописан по адресу: г.Бишкек, ул.Ахунбаева, д.137, кв.20,
паспорт AN 0873 256 выдан МВД 50-02 от 04.06.2008 г.
- Харламова Валентина Егоровна, 19.12.1948 г.р.,
прописана по адресу: г.Бишкек, ул.Л.Толстого,
паспорт AN 039 8404 выдан МВД 50-00 от 17.04.2007 г.

**Ответственный секретарь:** Джакипова Айгуль Тилековна.

### ОБСТОЯТЕЛЬСТВА ДЕЛА

28 октября 2010 года в Международный Третейский суд обратилось ОсОО СКМП Отель «Ак-Кеме», г. Бишкек, Кыргызская Республика (далее Истец или компания «Ак-Кеме»), с исковым заявлением к фирме «Систем Мюхендислик Иншаат Санайи ве Тиджарет А.Ш.», г. Измир, Турецкая Республика (далее Ответчик или «Систем Мюхендислик») о взыскании 12 500 000 долл. США.

Как следует из искового заявления и приложенных к нему документов, между Истцом и Ответчиком были заключены: Контракт 1 от 1 февраля 1993г., Специальное Соглашение 1, Приложение 1, Приложение 1а к Специальному Соглашению 1 и Специальное Соглашение №2, согласно которым Истец в качестве подрядчика обязался построить «под ключ» четырехзвездочный отель на 400 мест в городе Бишкеке.

Общая сумма Контракта составила 25 000 000 долл. США. При этом Специальным соглашением 1 и Приложениями 2 и 3 предусматривалось, что Ответчик финансирует и оплачивает свою долю участия в строительстве в размере 12 500 000 долл. США».

В целях осуществления строительства отеля, стороны Контракта зарегистрировали в г.Бишкек совместное Кыргызско-турецкое предприятие «Ак-Кеме-Пинара», с уставным капиталом в размере 27 000 000 долл. США, на условиях равного внесения по 13 500 000 долл. США.

Для обеспечения вклада доли кыргызского участника в строительстве отеля Правительство КР выделяет Истцу кредит в размере 6 000 000 долл. США (распоряжение №303-Р от 26.03.1993г.), а в последующем еще 2 700 000 долл. США (распоряжения Правительства КР №139-Р от 06.05.1994г., №187-Р от 13.06.1994г.). Всего компании «Ак-Кеме» было выделено 8 700 000 долл. США за счет кредитной линии, предоставленной Правительству КР, согласно Соглашению, заключенному 28.04.1992 г. между Турецким экспортно-кредитным банком и НБКР на сумму 75 000 000 долл. США.

Выделенные кыргызскому участнику кредитные средства были перечислены на банковский счет турецкой фирмы «Систем Мюхендислик», что дало ей возможность начать строительство отеля. Строительство отеля было начато на средства, вложенные компанией «Ак-Кеме». Впоследствии «Систем Мюхендислик» не представил никаких документов, подтверждающих выполнение им своих обязательств по внесению своей части доли в строительство отеля.

Из полученных 8 700 000 долл. США на выполнение строительно-монтажных работ, приобретение оборудования, механизмов, инвентаря и др., было израсходовано 3 664 500 долларов США, из которых «Систем Мюхендислик» за разработку проекта отеля получила 1 250 000 долл. США, а за менеджмент и др. 575 000 долл. США.

Расход оставшейся части денежных средств в размере 5 092 900 долл. США не был подтвержден ни одним документом в доказательство использования турецкой компанией средств в соответствие с Контрактом на строительство.

Компанией «Ак-Кеме» на имя «Систем Мюхендислик» были направлены претензионные запросы о добровольном исполнении взятых на себя по Контракту на строительство обязательств, предоставлении отчетов и платежных документов. Однако, даже запросы, адресованные турецкой компании государственными органами КР, с требованием предоставить факты, подтверждающие инвестирование в проект строительства отеля, остались без обоснованного ответа.

В связи с этим, Государственный комитет КР по иностранным инвестициям и экономической помощи (Госкоминвест) своим решением №04/338 от 12.04.96г. отозвал лицензию на право осуществления инвестиционной деятельности турецкой фирмы «Систем Мюхендислик» на территории республики.

Не согласившись с отзывом лицензии, «Систем Мюхендислик» обратился в суд с иском об отмене решения Госкоминвеста. Постановлением Высшего арбитражного суда КР от 18 марта 1998г. решение Госкоминвеста от 12.04.96г. №04/338 признано законным, в связи с неподтверждением факта осуществления «Систем Мюхендислик» инвестиционной деятельности на территории КР.

В связи с невыполнением «Систем Мюхендислик» обязательств, предусмотренных в Контракте на строительство отеля, Устава совместного кыргызско-турецкого предприятия «Ак-Кеме-Пинара» и Специального соглашения в части внесения уставной доли в размере 12 500 000 долл. США, кыргызская сторона самостоятельно продолжила строительство отеля, общая стоимость которого была рассчитана в размере 25 000 000 США, за свой счет, с привлечением дополнительных средств, кредитов и других иностранных инвесторов. Кроме вложения в уставный капитал совместного предприятия своей доли, компания «Ак-Кеме» вложила долю турецкой компании и, таким образом, сама покрыла всю стоимость строительства отеля.

Таким образом, обязательство «Систем Мюхендислик» по строительству отеля «под ключ» не было выполнено, равно как и обязательство по внесению 12 500 000 долл. США.

Разделом 13 Контракта на строительство предусмотрено, что: «В случае нарушения Контракта одним из партнеров в одностороннем порядке, виновная сторона должна возместить средства, вложенные турецким Экспортным банком авансом на строительство». Вложенные средства выдавались компании «Ак-Кеме» в виде кредита на условиях возврата. В связи с чем, возмещение 12 500 000 долл. США должно быть произведено турецкой компанией «Систем Мюхендислик» непосредственно в ОсОО СКМП Отель «Ак-Кеме».

В связи с невыполнением турецкой компанией обязательства по внесению 12 500 000 долл. США в уставный фонд совместного кыргызско-турецкого предприятия «Ак-Кеме-Пинара», размер неисполненного «Систем Мюхендислик» Контракта на строительство составил 12 500 000 долл. США.

ОсОО СКМП Отель «Ак-Кеме» пытался урегулировать спор с турецкой компанией в досудебном порядке, однако Ответчик на них не реагировал.

Считая свои права нарушенными, Истец, руководствуясь пунктом 12 Контракта на строительство, а также ст.ст. 10, 11 ГК КР; ст.ст. 5, 20 Закона «О третейских судах в Кыргызской Республике»; ст.ст. 19, 20 Регламента Международного Третейского суда при ТПП КР, обратился в МТС с требованием взыскать с Ответчика - турецкой компании «Систем Мюхендислик Иншаат Санайи ве Тиджарет, А.Ш.», в пользу ОсОО СКМП Отель «Ак-Кеме» денежную сумму в размере 12 500 000 (Двенадцать миллионов пятьсот тысяч) долл. США или 583 750 000 (Пятьсот восемьдесят три миллиона семьсот пятьдесят тысяч) сомов, а также взыскать с Ответчика расходы, связанные с арбитражным разбирательством.

Исковое заявление и приложенные к нему документы, дополнение к исковому заявлению направлены Ответчику письмами от 28.10.2010г., от 10.11.2010г., от 20.11.2011г.

Получение исковых материалов Ответчиком подтверждено уведомлениями курьерской службы от 15.11.2010г. и от 25.01.2011г.

Уведомление МТС о поступлении искового заявления направлено письмами №478 от 29 декабря 2010г. и от 9.11.2010г. Получение Ответчиком уведомления о поступлении в МТС исковых материалов подтверждено справкой курьерской службы TNT от 11.11.2010г.

Извещения направлены письмами МТС   №101 от 24.02.2011г., №109 от 28.02.2011г. Получение Ответчиком извещения №101 от 24.02.2011г. подтверждено уведомлением курьерской службы DHL от 04.03.2011г. Отказ Ответчика от принятия извещения №109 от 28.02.2011г. подтвержден уведомлением курьерской службы DHL от 01.03.2011г.

Извещения дополнительно дважды направлены МТС Ответчику по факсу письмами №137 от 05.03.2011г., №140 от 11.03.2011г. Получение Ответчиком этих факсов подтверждается приложенной к делу распечаткой.

Согласно статье 25 Регламента МТС, сформирован арбитраж в составе председателя Н.Г. Вилковой и арбитров А.М. Чекошева и Т.О. Кепенбаева. Запасным председателем и арбитрами назначены Ю.Д. Ким, С.Ч. Омуралиев и В.Н. Соломаха. Замечаний по формированию состава арбитража не заявлено.

Арбитражный сбор уплачен Истцом в соответствии с Положением об арбитражных сборах и расходах в сумме 74 439,14 долл. США.

Заседание по делу 14-16 марта 2011 года состоялось при участии представителей Истца. Ответчик, надлежащим образом извещенный о времени и месте слушания дела, в заседании представлен не был. Представитель Истца настаивал на рассмотрении дела по существу в отсутствие представителей Ответчика.

В ходе заседания Истец поддержал свои требования, заявленные в исковом заявлении, просил взыскать с Ответчика сумму в размере 12 500 000 (Двенадцать миллионов пятьсот тысяч) долл. США или 583 750 000 (Пятьсот восемьдесят три миллиона семьсот пятьдесят тысяч) сомов, а также взыскать с Ответчика расходы, связанные с арбитражным разбирательством.

Отзыва или каких-либо возражений от Ответчика не поступало.

В заседаниях МТС представители Истца поддержали заявленные требования. МТС заслушал пояснения свидетелей.

## МОТИВЫ РЕШЕНИЯ

Изучив материалы дела и заслушав представителей Истца, а также свидетелей, Международный Третейский суд пришел к следующим выводам.

**1.** Относительно lex arbitri МТС установил, что поскольку арбитражное разбирательство имеет место в Бишкеке, Кыргызская Республика, поэтому применимым к процедуре арбитражного разбирательства является Закон «О Третейских судах в Кыргызской Республике» от 30 июля 2002г. №135 в редакции Законов КР от 15 мая 2003г. №93 и от 11 июня 2004г. №73 (далее Закон «О третейских судах), которые регламентируют деятельность третейских судов по разрешению споров.

**2.** Рассмотрев вопрос об отсутствии представителей Ответчика в заседании, Международный Третейский суд установил следующее.

Исковое заявление Истца было получено МТС 28 октября 2010 г.

В соответствии со ст. 24 Регламента МТС Ответственный секретарь МТС письмом №478 от 29 октября 2010г. (накладная TNT Express №GD 398 535 442 WW от 30.10.2010г.) направил Ответчику уведомление о подаче искового заявления, само исковое заявление и предложил ему в срок не более 15 дней, с даты получения уведомления, представить по нему свой отзыв, подкрепленный соответствующими доказательствами. Кроме того, в соответствии со ст. 24 Регламента МТС Ответчик в тот же срок должен сообщить имена и фамилии избранных им арбитра и запасного арбитра или заявить просьбу о том, чтобы

4

арбитр и запасной арбитр за него были назначены Председателем МТС. Данное письмо с приложенным к нему исковым заявлением было получено Ответчиком 10 ноября 2010г. посредством доставки компанией TNT Express (справка TNT Express о доставке от 11 ноября 2011г.). Данное письмо Ответственного секретаря МТС осталось без ответа. Исковое заявление с приложениями отправлено Истцом посредством EMS Kyrgyzpost, номер накладной ЕЕ 0000445005 KG от 28 октября 2010г. и получено ответчиком 15 ноября 2010г.

Ответчик не воспользовался предоставленными ему ст. 6 Регламента МТС правами и не представил письменных объяснений, как это предусмотрено ст. 24 Регламента МТС. Поэтому на основании ст. 25.2 Регламента МТС определением Председателя МТС был назначен Т.О. Кепенбаев арбитром за ответчика.

Дополнение №1 к Исковому заявлению Истцом было направлено письмом от 20 января 2011г. Ответчику через компанию почтовой доставки TNT Express. Данное письмо с приложенным к нему Дополнением №1 к Исковому заявлению и соответствующими материалами было получено Ответчиком 25 января 2011г. согласно данным курьерской доставки TNT Express, номер накладной GD 395 745 844 WW.

Извещение о времени и дате слушаний, назначенных на 14, 15 и 16 марта, было направлено МТС Ответчику 24 февраля 2011г. (письмо МТС №101 от 24 февраля 2011г., авианакладная №2917941261), которое доставлено Ответчику и получено им 01 марта 2011г., что подтверждается имеющимся в деле уведомлением курьерской службы DHL от 04 марта 2011г., где указывается, что в получении данного письма расписалась Leila Guralp. Тем самым Ответчик был извещен о дате, времени и месте слушания за 10 дней до даты проведения слушаний, в соответствии со ст. 29.1 Регламента МТС. Далее письмом №137 от 28 февраля 2011г. МТС направил извещение о составе арбитража, о признании собственной компетенции арбитрами, принятии искового заявления и назначении даты слушания на 14-16 марта 2011г. Однако, согласно уведомлению от 11 марта 2011г. курьерской доставки DHL, Ответчик дважды отказался от принятия данных документов. Повторно данное письмо МТС направил 05 марта 2011г. по факсу и e-mail. Далее, письмом №140 от 11 марта 2011г. МТС по факсу были направлены:
- определение о признании собственной компетенции арбитрами,
- определение о принятии искового заявления к производству и
- определение о назначении даты слушания.

Таким образом, МТС уведомил Ответчика о дате слушания дела своевременно, в соответствии с п.1 ст. 29 Регламента МТС, однако Ответчик отказался от принятия извещения.

Как предусмотрено в п. 2 ст. 34 Регламента МТС, неявка стороны, надлежащим образом извещенной о времени и месте слушания, не препятствует разбирательству дела и вынесению решения, если только неявившаяся сторона не заявила в письменной форме ходатайство об отложении слушания дела по уважительной причине.

Поскольку подобное ходатайство от Ответчика не поступало, а Истец настаивал на рассмотрении дела, МТС на основании п. 2 ст. 34 Регламента МТС счел возможным провести арбитражное разбирательство в отсутствие представителей Ответчика.

3. По вопросу о компетенции Международного третейского суда на рассмотрение настоящего спора, состав арбитров установил следующее.

В исковом заявлении Истец заявил в МТС требование о взыскании с Ответчика 583 750 000 (Пятьсот восемьдесят три миллиона семьсот пятьдесят тысяч) сомов, в Дополнении №1 Истец заявил требование взыскании с Ответчика 12 500 000 (Двенадцать миллионов пятьсот тысяч) долл. США или 583 750 000 (Пятьсот восемьдесят три миллиона семьсот пятьдесят тысяч) сомов.

В обоснование компетенции МТС на рассмотрение указанного требования, Истец сослался на два договора: Договор об учреждении и деятельности совместного кыргызско-турецкого предприятия от 27 мая 1992г. и на Контракт 1 от 01 февраля 1993г. о строительстве в г.Бишкек (Республика Кыргызстан) четырехзвездочного отеля на 400 мест.

6

МТС, проанализировав содержание Договора об учреждении и деятельности совместного кыргызско-турецкого предприятия от 27 мая 1992г., констатировал следующее. В данном Договоре стороны согласились создать совместное предприятие и определили предмет его деятельности. Арбитражная оговорка в данном Договоре отсутствует. В дальнейшем между сторонами возник спор в связи с тем, что турецкая сторона – Ответчик по настоящему делу, не осуществил взнос в уставный капитал совместного предприятия. Поэтому в исковом заявлении Истец просил взыскать с Ответчика сумму 12 500 000 долл. США, представляющую неосуществленный Ответчиком взнос в уставный капитал совместного предприятия.

Согласно ст. 5 Закона «О третейских судах в Кыргызской Республике» спор может быть передан на разрешение третейского суда при наличии соглашения сторон о передаче спора данному третейскому суду или в силу закона. Как предусмотрено в п. 3 ст. 7 того же Закона, третейское соглашение должно содержать положение о том, что любой спор, разногласие или требование, возникающие из спора между сторонами, подлежит рассмотрению в третейском суде, а также наименование третейского суда, который должен рассмотреть возникший спор.

Поскольку сторонами Договора об учреждении и деятельности совместного кыргызско-турецкого предприятия от 27 мая 1992г. не согласован порядок разрешения споров в порядке третейского разбирательства, возникший между ними спор, относительно невнесения вклада Ответчиком в уставный фонд совместного предприятия, на основании ст. 5 Закона «О третейских судах» и ст. 3 Регламента МТС не может быть рассмотрен МТС, в связи с отсутствием у него компетенции на рассмотрение данного спора.

Далее МТС проанализировал Контракт 1 от 01 февраля 1993г., Специальное соглашение 1 о строительстве отеля на 400 мест в г. Бишкек «Ак-Кеме-Пилара» и Специальное соглашение 2.

Как следует из содержания Контракта 1, спор между Сторонами возник из гражданско-правовых отношений строительного подряда и подпадает под категории споров, которые согласно статье 1 Закона «О третейских судах», пункту 9 Положения о МТС при ТПП КР и подпунктами 2.2-2.4 статьи 2 Регламента МТС могут быть переданы по соглашению сторон на рассмотрение третейского суда.

В пункте 12 Контракта 1 от 01 февраля 1993 г. предусмотрено, что «все споры и разногласия, которые могут возникнуть при исполнении настоящего Контракта, Стороны решают дружественным путем, а в случае невозможности — Арбитражной комиссией в Торговой палате Республики Кыргызстан, в соответствии с правилами вышеуказанной Комиссии, решения которой обязательны для обеих Сторон и обжалованию не подлежат».

Содержание приведенной арбитражной оговорки свидетельствует о явно выраженном намерении сторон передать их спор на разрешение действующего при Торговой палате Республики Кыргызстан третейского суда, поименованного Сторонами «Арбитражной комиссией». В Кыргызской Республике при Торгово-промышленной палате действует Международный Третейский суд. Источное наименование в арбитражной оговорке Контракта 1 третейского суда не изменяет намерения сторон обратиться за разрешением споров в орган, постоянно действующий при Торгово-промышленной палате Республики Кыргызстан. Кроме того, при Торгово-промышленной палате Кыргызской Республики отсутствует какой-либо иной третейский суд.

МТС констатировал, что содержание арбитражной оговорки Контракта 1 соответствует требованиям ст.ст. 5 и 7 Закона «О третейских судах», ст. 3 Регламента МТС: во-первых, содержит договоренность сторон о передаче на рассмотрение третейского суда споров, содержит положение о том, что любой спор, разногласие или требование, возникающие из спора между сторонами, подлежит рассмотрению в третейском суде, а также наименование третейского суда, который должен рассмотреть возникший спор.

Относительно субъектного состава участников арбитражного соглашения, МТС констатировал следующее.

7

Контракт 1 от 01 февраля 1993 г., в котором содержится арбитражное соглашение, Специальное соглашение 1, Дополнительные соглашения 1 и 2 подписаны компанией «Ак-Кеме» и «Систем Мюхендислик», зарегистрированной в Стамбуле, Турция (Sistem Mühendislik Inşaat Sanayi ve Ticaret Anonim Şirketi).

Иск предъявлен ОсОО СКМП Отель «Ак-Кеме», зарегистрированным в г. Бишкек, по проспекту Мира, 93, к Ответчику - фирме «Систем Мюхендислик Иншаат Санайи ве Тиджарет А.Ш.» (Sistem Mühendislik Inşaat Sanayi ve Ticaret Anonim Şirketi), зарегистрированной в Измире, Турция.

Как следует из представленных Истцом документов, фирма Ответчика сменила местонахождение и зарегистрирована в Измире, Турция.

МТС считает целесообразным определить статус ОсОО СКМП Отель «Ак-Кеме» в данном деле, а именно: распространяется ли действие арбитражного соглашения, содержащегося в заключенных АО «Ак-Кеме» Контракте 1 от 01 февраля 1993г., Специальном соглашении 1 и Дополнительных соглашениях 1 и 2, на ОсОО СКМП Отель «Ак-Кеме».

В международном частном праве многих стран общепринятым является принцип, согласно которому законом юридического лица считается право страны, где это юридическое лицо учреждено. Данный принцип также закреплен в ст. 1184 Гражданского кодекса Кыргызской Республики (далее ГК КР). В ст. 1185 ГК КР предусмотрено, что гражданская правоспособность юридического лица определяется законом юридического лица. Поскольку АО «Ак-Кеме», СП «Ак-Кеме – Пинара» и ОсОО СКМП Отель «Ак-Кеме» созданы на территории Кыргызской Республики, их личным законом является закон Кыргызской Республики, в частности, ГК КР, и по этому закону определяется их гражданская правоспособность, то есть способность своими действиями приобретать и осуществлять гражданские права, создавать для себя гражданские обязанности и исполнять их.

Как указывается в Исковом заявлении и Дополнении №1 к нему и как пояснено представителем Истца в заседаниях по делу, имел место переход прав кредитора от одного лица к другому. В теории и практике международного арбитража общепринято, что при переходе прав кредитора от одного лица к другому имеет место и переход арбитражного соглашения.

Законодательством (ст. 314 ГК КР) предусмотрено два вида оснований перехода прав кредитора к другому лицу. Одним из них является передача кредитором права (требования) другому лицу по сделке (уступка требования); другим основанием является переход права требования к другому лицу на основании закона.

Как следует из обстоятельств дела и не оспорено Ответчиком, в период с 1993 года по настоящее время имели место события, оказавшие влияние не только на правовое положение АО «Ак-Кеме», но и на взаимоотношения сторон в связи с отелем.

При анализе данного вопроса МТС исходит из юридических фактов, которые состоят в следующем. Управлением по регистрации и ликвидации предприятий при Фонде госимущества (далее Управление) был подан в Арбитражный суд г. Бишкек иск о признании АО «Ак-Кеме» банкротом.

Хотя решением Арбитражного суда г. Бишкек от 16 ноября 1998г. в иске Управлению было отказано, Высший арбитражный суд КР 10 декабря 1998г. отменил вышеуказанное решение Арбитражного суда г.Бишкек и признал АО «Ак-Кеме» неплатежеспособным. 01 июля 1999г. Правительство Кыргызской Республики, Правительство Турции, спецадминистратор АО «Ак-Кеме» и руководство компании Ответчика заключили Генеральное соглашение и договор купли-продажи 100%-ной доли в уставном капитале вновь созданного ОсОО «Отель Ак-Кеме де люкс». 02 июля 1999г. теми же сторонами был заключен договор, согласно которому Правительство КР и спецадминистратор уступают Ответчику право требования с АО «Ак-Кеме» задолженности в сумме 10 985 799 (Десять миллионов девятьсот восемьдесят пять тысяч семьсот девяносто девять) долл. США (включая 8 700 000 долл. США кредитная сумма, 2 285 799 долл. США проценты по кре-

8

диту) и 19 571 000 сомов вклад Правительства КР. 01 июля 1999г. спецадминистратором АО «Ак-Кеме» и Ответчиком был заключен договор купли-продажи указанной доли.

Постановлением Законодательного собрания Жогорку Кенеша КР №874-11 от 7 октября 2002г. было установлено, что продажа активов АО «Ак-Кеме» была осуществлена с грубым нарушением законодательства КР.

27 июня 2005г. решением Ленинского районного суда г. Бишкек применены последствия недействительности ничтожной сделки – договора купли-продажи доли и стороны возвращены в первоначальное положение. Несмотря на обращения Ответчика в вышестоящие судебные инстанции, 02 ноября 2005г. постановлением Верховного суда КР указанное решение от 27 июня 2005г., а также определение судебной коллегии Бишкекского городского суда от 30 августа 2005г. оставлены в силе. Надзорная жалоба Ответчика оставлена без удовлетворения.

Поскольку Ответчик не выполнял принятые обязательства по завершению строительства отеля, включая финансирование строительства (как было предусмотрено Контрактом 1 от 01 февраля 1993г., Специальном соглашении 1 и Дополнительных соглашениях 1 и 2), имела место ликвидация СП «Ак-Кеме – Пинара» и в 1995 году была осуществлена перерегистрация АО «Ак-Кеме» в ЗАО «Ак-Кеме» (дата первичной регистрации 16.10.1995г.). Принадлежавший ранее ликвидированному СП «Ак-Кеме – Пинара» недостроенный гостиничный комплекс был отражен на балансе перерегистрированного ЗАО «Ак-Кеме». Впоследствии, в 1997 году ЗАО «Ак-Кеме» внесло недостроенный гостиничный комплекс в качестве своей доли в ОсОО СКМП Отель «Ак-Кеме».

Следовательно, был осуществлен перевод долга должником и уступка требования кредитора. А именно, был осуществлен перевод кредиторской задолженности ЗАО «Ак-Кеме» к ОсОО СКМП Отель «Ак-Кеме», являющимся Истцом по настоящему делу.

МТС приходит к выводу о том, что к ОсОО СКМП Отель «Ак-Кеме» перешли права требования ЗАО «Ак-Кеме» к Ответчику, включая арбитражное соглашение из Контракта 1 от 01 февраля 1993г., Специального Соглашения 1 о строительстве отеля на 400 мест в г.Бишкек и Специального Соглашения 2.

Поэтому МТС на основании п. 1 ст. 14 Закона «О третейских судах», признал наличие компетенции на рассмотрение спора из Контракта 1 от 1 февраля 1993 г., Специального Соглашения 1 о строительстве отеля на 400 мест в г. Бишкеке и Специального Соглашения 2.

**4. Рассмотрев просьбу Истца** о наложении ареста и обращении взыскания на имущество, принадлежащее Ответчику – отелем «Фейе Пинара» (Hotel Feye Pinara), находящийся по адресу: Turgutreis Palamut mevkii 48960 Bodrum / Muğla / Turkey, МТС констатировал следующее. Данное требование заявлено Истцом в соответствии с предписаниями ст. 22 Закона «О третейских судах в КР». Согласно данной статье, если стороны не договорились об ином, третейский суд по просьбе любой стороны может распорядиться о принятии какой-либо стороной мер по обеспечению иска в отношении предмета спора, которые он сочтет необходимыми.

Учитывая процессуальную историю взаимоотношений сторон и отсутствие между ними отношений, МТС на основании ст. 22 Закона «О третейских суда в КР» полагает целесообразным принятие следующих мер по обеспечению иска, а именно, запретить ответчику – фирме «Систем Мюхендислик Иншаат Санайи ве Тиджарет А.Ш.» (Sistem Mühendislik İnşaat Sanayi ve Ticaret Anonim Şirketi) распоряжаться объектом недвижимости – отелем «Фейе Пинара» (Hotel Feye Pinara), принадлежащим ответчику и находящимся по адресу: Turgutreis Palamut mevkii 48960 Bodrum / Muğla / Turkey. При вынесении данного решения МТС исходил из местонахождения указанного объекта недвижимости, согласно информации на сайте указанного отеля.

**5.** Относительно применимого к правоотношениям сторон права МТС констатировал, что в подписанных сторонами Контракте 1 от 01 февраля 1993г., Специальных соглашениях 1 и 2 отсутствует согласование применимого права.

При таких условиях МТС руководствуется пунктом 3 ст. 6 Закона «О третейских судах в КР» и пунктом 2.6 ст. 2 Регламента МТС, согласно которым при отсутствии соглашения о применимом праве третейский суд самостоятельно определяет нормы права, которые подлежат применению при рассмотрении спора. МТС принимает решение по существу спора в соответствии с применимым правом, а в части, не урегулированной применимым правом, обычаями делового оборота.

Поскольку сторонами не согласовано применимое право, МТС обладает полномочиями самостоятельно определить нормы права, которые подлежат применению при рассмотрении настоящего спора.

МТС исходит из предписаний ст. 1167 ГК КР, согласно которой право, подлежащее применению к гражданско-правовым отношениям с участием иностранных граждан или иностранных юридических лиц либо осложненных иным иностранным элементом, определяется на основании данного кодекса, иных законов, международных договоров и признаваемых международных обычаев, а также на основании соглашения сторон.

Поскольку между Кыргызской Республикой и Турцией отсутствуют международные соглашения, регламентирующие порядок определения применимого права к указанным отношениям и поскольку соглашением сторон применимое право не определено, МТС вправе самостоятельно определить применимое при разрешении настоящего спора право.

Руководствуясь предписаниями пункта 2.2. ст. 1199 ГК КР, согласно которому при отсутствии соглашения сторон договора о подлежащем применению праве применяется независимо от положений пункта 1 данной статьи: к договору строительного подряда – право страны где создаются предусмотренные договором результаты, МТС, констатируя, что результат в виде отеля создавался на территории Кыргызской Республики в городе Бишкек, приходит к выводу о том, что при разрешении данного спора подлежит применению право Кыргызской Республики, прежде всего ГК КР.

6. Хотя согласно нормам применимого права пункта 1 ст. 215 ГК КР исковая давность применяется по заявлению стороны в процессе и Ответчиком не заявлено никаких возражений по этому вопросу, МТС полагает целесообразным рассмотреть данный вопрос.

Исследование договорных отношений между сторонами приводит к выводу о том, что Специальным соглашением 1 и Контрактом 1 на строительство от 01 февраля 1993г. было предусмотрено строительство четырехзвездочного отеля в городе Бишкек «под ключ». По упомянутому Контракту 1 на строительство от 01 февраля 1993г. сроком исполнения обязательств Ответчиком является момент Акта государственной комиссии о приемке в эксплуатацию законченного строительством «под ключ» объекта.

Срок действия в указанных документах не определен, следовательно, согласно ст. 385 ГК КР они признаются действующими до определенного в них момента окончании исполнения сторонами обязательства. Ни одна из сторон договорных отношений не заявила об отказе от Контракта 1 от 01 февраля 1993г., ни от Специального соглашения 1, ни от Дополнительных соглашений 1 и 2.

О незавершении строительства отеля в полном объеме свидетельствует тот факт, что окончательной государственной приемки отеля не было. 08 декабря 1995г. комиссия из представителей АО «Ак-Кеме» и «Систем Мюхендеслик» (в лице господина Л.Хазера) зафиксировала множественные нарушения со стороны Ответчика и подтвердила факт невыполнения Ответчиком обязательства по строительству отеля «под ключ». Таким образом, принятые в соответствии с заключенным Контрактом 1 от 1 февраля 1993г. и Специальным соглашением 1, Дополнительными соглашениями 1 и 2 обязательства Ответчиком не выполнены, что признано им в указанном Акте от 8 декабря 1995г.

Согласно ст. 216 ГК КР по обязательствам с определенным сроком исполнения течение исковой давности начинается по окончании срока исполнения. Поскольку исполнение по данному Контракту 1 осуществлено не было, и поскольку ни одна из сторон от ис-

полнения не отказалась, поэтому данный Контракт продолжает действовать. Поэтому, как следует из предписаний пункта 1 ст. 216 ГК КР, течение срока исковой давности не начиналось, и иск предъявлен Истцом своевременно.

7. По существу заявленного Истцом требования МТС констатировал следующее. Спор между сторонами возник из Контракта 1 от 01 февраля 1993г. о строительстве в г.Бишкек отеля на 400 мест (с последующими дополнениями).

Финансирование строительства отеля могло быть осуществлено двумя способами. Первое, путем внесения ответчиком доли в уставный капитал созданного сторонами совместного предприятия. Хотя рассмотрение данного вопроса выходит за пределы компенции МТС, как отмечено в пункте 2 настоящих Мотивов, МТС принимает к сведению информацию Истца о том, что, как следует из материалов дела и не оспорено Ответчиком, его доля в уставный капитал внесена не была.

Второе, путем реализации кредитного соглашения. Финансирование работ по данному объекту осуществлялось в рамках предоставленного Эксимбанком Турции Правительству КР кредита в размере 75 000 000 долл. США. Правительство КР в перечне приритетных проектов, которым выделялись из данной кредитной линии денежные средства, выделило Истцу 8 700 000 долл. США. Данную сумму Истец должен был возвратить Правительству КР, которое, в свою очередь, осуществляло погашение кредита Эксимбанку Турции.

Данные выделенные Истцу денежные средства были перечислены на банковский счет Ответчика, что позволило начать строительство отеля.

Предусмотренные Контрактом 1 от 1 февраля 1993 г., Специальным соглашением 1 и Дополнительным соглашениям 1 и 2 работы должны были финансироваться Ответчиком, как предусмотрено, в частности, в статье 2.2.4.: указано, что сумма осваиваемая подрядчиком (Ответчиком по данному делу) в соответствии со Специальным соглашением 1, Приложениями 2 и 3, составляет 12 500 000 долл. США. В частности, в пункте 3 указанного Специального соглашения предусматривается, что Ответчик в качестве инвестирования своей доли в строительство выполняет предварительный и рабочий проекты, обеспечивает доставку рабочей силы, строительных материалов, оборудования, мебели, выполняет валютную оплату транспорта, оплачивает жалование рабочим.

В связи с тем, что Ответчик в то время заявил об отсутствии денежных средств и, учитывая, что время использования кредита было ограничено, Истец, получив от Ответчика обещание о том, что его финансовые обязательства будут выполнены, начал строительство отеля, используя полученные от Правительства КР 8 700 000 долл. США и рассчитывая, что Ответчик возместит ему эти средства.

Истцом было перечислено на счет Ответчика 8 700 000 долл. США, что подтверждено сертификатами прогрессивных платежей Эксимбанка Турции и представляли собой оплату тех услуг, которые должны были быть осуществлены Ответчиком. В частности, Дополнительным соглашением (пункт 3 абзац 3) было согласовано, что «Систем Мюхендеслик» заплатит «Ак-Кеме» в течение 30 дней с даты подтверждения НБКР и Эксимбанком и вступления в действие дополнительного кредита на 2 700 000 долл. США. стоимость материалов, предоставленных и привезенных на стройку компанией «Ак-Кеме» в соответствии с Приложением 1 до даты вступления в действие данного соглашения и которые были использованы на строительство.

Однако Ответчик в нарушение принятых обязательств не представил отчеты по расходованию средств на осуществление строительства.

19 октября 1995г. Государственной налоговой инспекцией по Ленинскому району г.Бишкек в присутствии руководителя Ответчика господина Фехима Ениже была осуществлена проверка деятельности компании Ответчика. В Акте произведенной проверки, подписанным господином Фехимом Ениже и главным бухгалтером установлено, в частности, что «Систем Мюхендеслик» получено на строительство отеля от АО «Ак-Кеме» на момент составления Акта 9 017 685 долл. США. Однако документов, подтверждающих

11

приобретение и ввоз на территорию Кыргызской Республики строительных материалов и оборудования, представлено не было.

В подтверждение утверждения о невыполнении Ответчиком обязательств по финансированию строительства отеля Истцом представлены следующие доказательства: акт №266/92 Республиканского управления госэкспертизы «Нарксапат» от 27 ноября 1992г. о неутверждении рабочего проекта объекта строительства, письмо НБКР о результатах проверки деятельности Ответчика, письмо Государственной таможенной инспекции КР от 7 сентября 1995г. об отсутствии экспортно-импортных операций у Ответчика, письмо Нацстаткомитета КР №10-14/954 от 25 октября 1995г. о ввозе товаров на сумму 1 019 268 долл. США, акт комиссии Госкомитета по архитектуре и строительству КР от 29 ноября 1995г. о разногласиях сторон по вопросам долевого строительства.

В результате из переданных Истцом Ответчику денежных средств, полученных ранее Истцом по кредиту от Правительства КР и которые Истец был обязан возвратить Правительству КР, как указано в письме Нацстаткомитета №10-14/954 от 25 октября 1995г. установлено, что ввоз товаров компанией «Систем Мюхендислик» отмечен только в 1995 году на общую сумму 1 019 268 долл. США.

По запросу Истца Государственная таможенная инспекция КР сообщила: «за период с 1 января 1994 г. по 31 декабря 1994 г. «Систем Мюхендеслик» вообще не осуществляла экспортно-импортных операций».

Таким образом, единственным подтверждением факта финансирования Ответчиком работ по строительству является письмо Нацстаткомитета №10-14/954 от 25 октября 1995г., подтверждающее расход денежных средств, полученных Ответчиком от Истца в сумме 1 019 268 долларов США.

МТС констатирует, что имеющимися в деле доказательствами подтверждено участие Ответчика в финансировании проекта на сумму 1 019 268 долларов США. Тем самым Ответчиком нарушены принятые им обязательства, предусмотренные не только Контрактом 1 и Специальным соглашением 1 и Дополнительными соглашениями 1 и 2, но и ст.ст. 662, 665, 667 ГК КР.

Поскольку Ответчиком нарушены принятые им по Контракту 1, Специальному соглашению 1 и Дополнительным соглашениям 1 и 2 обязательства, на основании ст.ст 299, 662, 665, 667 ГК КР требование истца в размере 11 480 732 долл. США подлежит удовлетворению и Ответчику надлежит уплатить Истцу сумму 11 480 732 долл. США.

В остальной части требование Истца удовлетворению не подлежит.

Заявленное в исковом заявлении требование о взыскании процентов годовых с требуемой суммы 12 500 000 долл. США по ставке LIBOR Истцом не поддержано и его представителем в заседании МТС заявлено, что данное требование им снимается. Поэтому требование о взыскании процентов годовых, не поддержанное Истцом, остается без рассмотрения.

**8.** Рассмотрев требование Истца о возмещении расходов по арбитражному сбору (включая регистрационный сбор), МТС констатировал, что Истцом в соответствии с пунктами 1-3 Положения об арбитражных расходах и сборах МТС при подаче иска был уплачен арбитражный сбор (включая регистрационный сбор) в размере 73 924 долл. США.

Поскольку требование Истца удовлетворено частично, Ответчику в соответствии с пунктом 6.2 указанного Положения надлежит компенсировать расходы Истца в части, пропорциональной удовлетворенным требованиям, т.е. в сумме 68 356 долларов США.

**9.** Рассмотрев требование Истца о возмещении Ответчиком расходов, связанных с защитой своих интересов через юридических представителей, МТС на основании пункта 9 Положения об арбитражных расходах и сборах МТС, с учетом сложности дела и объема состязательных документов, посчитал разумным и справедливым возложить на Ответчика уплату указанных понесенных Истцом расходов сумме 5 000 долларов США.

**10.** Поскольку председателем состава арбитража избрано лицо, имеющее постоянное местопребывание вне места проведения заседаний МТС, согласно пункту 7.4 Положе-

11

ния об арбитражных расходах и сборах МТС, аванс на оплату расходов по его участию в арбитражном разбирательстве должна внести в равной доле каждая из сторон. МТС констатировал, что расходы по участию в заседаниях председателя состава арбитража составили 1 624 доллара США. Ответчиком в равной доле не были понесены указанные расходы. Указанная сумма в полном объеме была внесена Истцом. Поэтому на основании пункта 7.4 Положения об арбитражных расходах и сборах МТС, Ответчику надлежит компенсировать Истцу сумму в размере 812 долларов США.

Исходя из изложенного и руководствуясь ст.ст. 22, 28, 29, 31, 39 Закона «О третейских судах в Кыргызской Республике», статьями 36, 44-47 Регламента МТС, Международный третейский суд решил:

## РЕЗОЛЮТИВНАЯ ЧАСТЬ РЕШЕНИЯ:

**1.** Исковые требования ОсОО СКМП Отель «Ак-Кеме», г. Бишкек, Кыргызская Республика, к фирме «Систем Мюхендислик Иншаат Санайи ве Тиджарет А.Ш.», г. Измир, Турция (Sistem Mühendislik Inşaat Sanayi ve Ticaret Anonim Şirketi, Izmir, Turkiyе) о взыскании 12 500 000 (Двенадцати миллионов пятисот тысяч) долларов США удовлетворить частично.

**2.** Взыскать с фирмы «Систем Мюхендислик Иншаат Санайи ве Тиджарет А.Ш.» Измир, Турция - Sistem Mühendislik Inşaat Sanayi ve Ticaret Anonim Şirketi, Izmir, Turkiye, в пользу ОсОО СКМП Отель «Ак-Кеме», г. Бишкек, Кыргызская Республика, 11 554 900 (Одиннадцать миллионов пятьсот пятьдесят четыре тысячи девятьсот) долларов США, включая:

- 11 480 732 (Одиннадцать миллионов четыреста восемьдесят тысяч семьсот тридцать два) долларов США в удовлетворение основного требования Истца;

- 68 356 (Шестьдесят восемь тысяч триста пятьдесят шесть) долларов США в возмещение расходов Истца по уплате арбитражного и регистрационного сборов;

- 5 000 (Пять тысяч) долларов США в возмещение расходов Истца, понесенных в связи с защитой интересов через юридических представителей;

- 812 (Восемьсот двенадцать) долларов США в возмещение расходов Истца на оплату участия Председателя состава в арбитражном разбирательстве.

**3.** Удовлетворить просьбу Истца об обеспечительных мерах путем запрещения ответчику - фирме «Систем Мюхендислик Иншаат Санайи ве Тиджарет А.Ш.» (Sistem Mühendislik Inşaat Sanayi ve Ticaret Anonim Şirketi) распоряжаться объектом недвижимости – отелем «Фейе Пинара» (Hotel Feye Pinara), принадлежащим ответчику и находящимся по адресу: Turgutreis Palamut mevkii 48960 Bodrum / Muğla / Turkey.

**4.** В остальной части исковых требований Истца отказать.

**5.** Требование Истца о взыскании с Ответчика процентов годовых оставить без рассмотрения.

**6.** Решение вступает в силу немедленно, является окончательным и обжалованию не подлежит.

Настоящее решение составлено и подписано в трех подлинных экземплярах, один из которых предназначен для хранения в делах Международного третейского суда, один – для Истца и один – для Ответчика.


**Председатель состава арбитража:**          Вилкова Н.Г.


**Арбитры:** Кепенбаев Т.О.          Чекошев А.М.